ORLAN O. CULLEN and another *vs.* WILLIAM DAWSON and others.

August 11, 1877.

Interpleader—Issues Between all the Parties may be Submitted at the Same Time—When Plaintiff must Reply.—In interpleader proceedings the better practice is to determine first whether the interpleader will lie. If it will not, it is unnecessary to go further. If it will, then, upon bringing the money or other thing in dispute into court, the plaintiff should be discharged from liability, and the action proceed upon the issues between the parties defendant. Nevertheless, it is admissible that the

whole controversy between the parties to the action, including as well the issues between the plaintiff and the defendants as the issues between the defendants, be submitted upon one trial. Whichever course is adopted, the preliminary question is, will the interpleader action lie? Unless the complaint upon its face shows that the action will not lie, if defendants put in an answer denying the allegations of the complaint, or set up new matter in bar of the action, the plaintiff must reply, (when a reply is required by our rules of pleading,) and the issues raised must be tried in order to determine the preliminary question mentioned. When this question has been answered in the affirmative, if all the issues have been submitted upon one trial and the proofs are closed, the court is possessed of the whole case, and may proceed to dispose of it, and of the rights of all parties.

**Same—When Action will be Sustained.**—To sustain an action of interpleader it is held that the plaintiff should stand indifferent between the defendants, and that, as respects the subject of the interpleader, he must not have incurred a personal obligation to one of the defendants, independent of the question between the defendants themselves.

**Same—Estoppel—Bankruptcy.**—The facts of the case at bar considered with reference to this rule, and found not to establish a certain estoppel on account of which it was claimed that the plaintiffs did not stand indifferent as between the defendants. *Held*, that the interpleader action is properly brought upon the state of facts appearing in this case. *Held*, *further*, that, upon the facts found by the court below, the consideration of a certain agreement is to be taken not to have been estate, real or personal, of a certain bankrupt, at the date of the filing of his petition in bankruptcy, and that, therefore, it did not pass to his assignee in bankruptcy under the assignment made by a register in bankruptcy.

This was an appeal by plaintiffs from an order of the district court for Ramsey county, *Simons, J.*, presiding, denying a motion for a new trial.

*Geo. L. & C. E. Otis*, for appellants.

*Smith & Egan* and *R. J. Reid* and *Samuel Hardwick*, for respondents.

BERRY, J. This is an interpleader action commenced by the plaintiffs on March 25, 1876.

In the complaint the plaintiffs set out an agreement, (hereinafter recited,) executed and delivered by them to Lyman C. Dayton, admit the receipt of the money therein referred to, and allege their willingness to pay the sum mentioned in the agreement as soon as it can be determined who is rightfully

entitled to the same. The complaint further alleges that defendants Dawson & Co. claim to be the owners and holders of the agreement, and have commenced an action to recover the money mentioned therein; that Simonton, as assignee in bankruptcy of Dayton, also claims the money due on the agreement; that the plaintiffs are ignorant which is entitled to the money, and are ready to bring the same into court, etc. As relief, the complaint, among other things, asks that the action brought by Dawson & Co. may be enjoined, and that plaintiffs, on bringing the money into court, may be discharged from all liability to either of the defendants. The money in controversy was paid into court by the plaintiffs, and an injunction issued.

Defendants Dawson & Co. answered, alleging a purchase of the agreement by them of Dayton, for value paid, and that, when Dayton offered to sell it to them, the plaintiffs, to induce them to purchase, represented that the agreement belonged to Dayton, and that if they (Dawson & Co.) purchased the same, plaintiffs would pay to them the sum mentioned therein. The answer further alleged that Dawson & Co. purchased the agreement upon the strength of these representations, and that they were still owners and holders of the agreement, and entitled to receive the money due thereon. Plaintiffs replied to the answer, denying the alleged representations. The defendant Simonton also answered, setting up the facts upon which he claimed title to the agreement, and to the moneys due thereon, as Dayton's assignee in bankruptcy.

Upon the issues thus raised the case was tried by the district court, by which facts were found as follows: On August 8, 1854, Charles R. Rice, for a money consideration, executed a contract by which he agreed to convey to Lyman C. Dayton certain lands when he (Rice) should have obtained title thereto. Having obtained title he refused to make conveyance, and Dayton, in March, 1855, commenced an action against him, in the district court for Ramsey county, to en-

force specific performance. In June, 1855, upon Rice's demurrer to the complaint, the court adjudged and determined that Dayton was not entitled to a conveyance of any portion of the lands, upon the ground that the contract to convey was against public policy, and null and void, but that Dayton was entitled to recover of Rice the money paid him as before stated. From the judgment no appeal was taken. In 1859 Susan M. Cullen, one of the plaintiffs, became owner of a portion of the lands mentioned, and in 1867 C. D. Gilfillan became owner of another portion of the same. Sometime in 1871 Rice died.

On February 29, 1868, Dayton filed his petition in bankruptcy. In December, 1872, he was duly adjudged a bankrupt, and the defendant Simonton was duly appointed his assignee. He accepted the appointment, and entered upon its duties, and in January 1873, the register in bankruptcy executed and delivered to him an assignment of all the estate, real and personal, which belonged to Dayton on February 29, 1868. The schedule of assets filed by Dayton, at the time of filing his petition in bankruptcy, contained, among others, the following item, to-wit: "Interest in land purchased of Charles R. Rice, (describing it.) The property was deeded to other parties by Rice; title in litigation"—this item referring to Dayton's supposed interest in the lands under the contract before mentioned. In February, 1875, Susan M. Cullen and Gilfillan were admitted as parties defendant in the action between Dayton and Rice. Such proceedings were had therein that on April 9, 1875, judgment was duly entered dismissing the action for want of prosecution. In March, 1875, defendant Simonton applied to the court for permission to prosecute the action as assignee. His application was denied by an order of April 9, 1875. Dayton made a motion to vacate the judgment of dismissal, and also appealed from the order of dismissal to the supreme court, but Simonton refused to take or prosecute said appeal, and wholly abandoned the action.

· Afterwards, in October, 1875, the parties to the action—viz.: Dayton, plaintiff, and S. M. Cullen and Gilfillan, defendants— entered into a written stipulation, by which they agreed that the motion to vacate the judgment be and is withdrawn; that the whole subject-matter of the action has been and is fully settled; that the judgment of dismissal shall stand as a valid final judgment in the action, and that the appeal from the order of dismissal shall be dismissed. The motion to vacate was accordingly withdrawn, and the appeal dismissed, and, in consideration thereof, the plaintiffs Susan M. and Orlan O. Cullen executed and delivered to Dayton an agreement as follows, to-wit:

"$1,635. St. Paul, Minn., Oct. 7, 1875.

"We promise to pay to Lyman C. Dayton, or his order, $1,635, at the First National Bank of St. Paul, for value received, out of the first money hereafter received by us from the sale of the property to the Protestant Orphan Asylum; the said sum to bear interest at the rate of eight per cent. per annum, at the expiration of three months from this date.

"Susan M. Cullen.
"Orlan O. Cullen."

On December 11, 1875, Dayton, for value, sold and transferred the agreement to the firm of Dawson & Co., (then and now composed of defendants Dawson, Smith, and Scheffer,) under circumstances which, as the court finds, estop the plaintiffs to deny the validity of the agreement, or to deny, or in any manner (by suit or otherwise) to question or dispute the title of Dayton thereto, at the time when he sold and transferred it to Dawson & Co. On March 6, 1876, Simonton served on Susan M. Cullen a notice informing her that he was Dayton's assignee, and that moneys due Dayton should be paid to him. The plaintiffs having received, on account of sales of the property referred to in their agreement, the sum of $2,500, Dawson & Co. duly demanded payment of the agreement, which was refused. . .

Thereafter, on March 13, 1876, Dawson & Co. commenced

an action against plaintiffs, in the district court, to recover the amount due on the agreement. In this action no judgment has been rendered. As conclusions of law the court finds:

"*First.* That, as between said plaintiffs and said defendants Dawson & Co., said plaintiffs are estopped to deny the validity of said note, or to deny, or in any manner (by suit or otherwise) to question or dispute the title of said Dayton thereto, at the time he sold and assigned the same to said defendants, as above stated.

"*Second.* That this action of interpleader cannot be maintained, and that said defendants Dawson & Co. are entitled to have the same dismissed, and the said injunction, heretofore issued, herein dissolved, etc.

"*Third.* That this suit not being maintainable as an interpleader action, the question whether or not, upon the foregoing facts, a cause of action exists in favor of said defendant Edward Simonton, assignee as aforesaid, cannot be adjudged or determined herein."

Judgment was accordingly ordered, dismissing this action and dissolving the injunction. The plaintiffs moved for a new trial on the ground that the decision was not justified by the evidence, and was against law; and from the order denying their motion they appeal. The plaintiffs and Simonton insist that, instead of dismissing the action, the court below should have determined the rights of all the parties.

In considering this case it is to be observed, at the outset, that the whole controversy between the parties to the action, including as well the issues between the plaintiffs and defendants on the interpleader complaint, as the issues between the defendants, was submitted to the court below upon one trial. As a matter of practice it would seem to be more orderly and regular to determine first whether the interpleader will lie. If it will not, it is unnecessary to go further. If it will, then, upon bringing the money or other things in dispute into court, the plaintiff should be discharged from liability, and

the action proceed upon the issues between the defendants. Nevertheless, the course of procedure pursued in the case at bar is admissible. *Yates* v. *Tisdale,* 3 Edw. Ch. 71; *City Bank* v. *Bangs,* 2 Paige, 570.

Whichever course is adopted the preliminary question is, will the interpleader action lie? Unless the complaint, upon its face, shows that the action will not lie, if the defendants put in an answer denying the allegations of the complaint, or set up new matter in bar of the action, the plaintiff must reply, (where a reply is required by our rules of pleading,) and the issues raised must be tried in order to determine the preliminary question mentioned. 2 Dan. Ch. Pr. (3d Am. Ed.) 1675; Story Eq. Pl. § 297a. This question being answered in the affirmative, if, as in the present instance, all the issues have been submitted upon one trial, and the proofs are closed, the court is possessed of the whole case, and may proceed to dispose of it, and of the rights of all parties. *Yates* v. *Tisdale, supra.*

To sustain an action for interpleader it is held that the plaintiff should stand indifferent as between the defendants; and that, as respects the subject of the interpleader, he must not have incurred a personal obligation to one of the defendants, independent of the questions between the defendants themselves. In the case at bar Simonton interposed no objection to the interpleader. Dawson & Co. claimed that the plaintiffs had estopped themselves to call in question their (Dawson & Co.'s) title to the agreement. The estoppel was claimed to have arisen out of representations of the plaintiffs, the effect of which (as insisted) was that, as respected the agreement, the plaintiffs had incurred a personal obligation to Dawson & Co., independent of the question of title between Dawson & Co. and Simonton. Upon the issues raised, then, the solution of the question whether the interpleader action would lie, depended upon whether the facts in the case established the estoppel. The court below found and held that they did. This, we think, was wrong. Without entering into a

detailed analysis of the evidence, we are of opinion that it does not, by fair construction, reasonably tend to prove that the plaintiffs made any representations to Dawson & Co. with respect to Dayton's title to the agreement in question. The substance and effect of the representations testified to were nothing more than a statement by plaintiffs that the agreement was valid and binding on them, and that they should pay it. A statement of this kind added nothing to the agreement itself, and created no personal obligation on the part of the plaintiffs beyond that which they assumed by the execution of the agreement. It not only does not make out the estoppel found, but it is of no importance in the case, since there is no dispute or issue as to the validity and binding force of the agreement, and the money due by its terms has been brought into court. The estoppel claimed not having been established, it follows, from what we have before said, that the interpleader action lies in this case, and that the court below erred in holding to the contrary.

The whole case having been submitted to and tried by the court below, and the facts having been fully found, it next becomes our duty to determine the rights of the defendants to the agreement in question.

It appears that the property which was assigned to Simonton by the register in bankruptcy was "all the estate, real and personal, of the said Lyman C. Dayton, * * * which belonged to him on the twenty-ninth day of February, 1868."

The agreement in dispute was executed in 1875.

The question, then, is, was the consideration of that agreement, in any part, estate, real or personal, of Dayton, on February 29, 1868. That Dayton had no right, title or interest in the Rice lands had (as the court below finds) been determined in overruling Rice's demurrer to Dayton's complaint. As to whether Dayton had any valid claim for the recovery of the purchase money paid by him to Rice does not appear to have been determined, as the action is found to have been still pending when Mrs. Cullen and Gilfillan were

admitted to defend in 1875, and there is nothing found by the referee which goes to show any validity in the claim whatever. On the contrary, the refusal of the assignee to take or prosecute an appeal from the order of dismissal, and his total abandonment of the action, raises a presumption, certainly as against him, that Dayton's pretended claim against Rice possessed no validity or value whatever. If the claim possessed no validity or value, it certainly was not estate, real or personal, belonging to Dayton on the twenty-ninth day of February, 1868, and there was nothing in it in which the assignee could acquire any interest or title.

Upon the facts found it is, then, to be taken and assumed that the agreement which is the subject of this interpleader was executed by the plaintiffs solely for the purpose of buying peace, and not upon the basis that Dayton's alleged cause of action against Rice possessed any validity whatever. In this view of the matter the agreement was something acquired by Dayton after February 29, 1868, and was his property, and not the property of the assignee.

From all this it follows: *First*, that the plaintiffs are entitled to maintain this action and to be discharged from liability; *second*, that by the transfer by Dayton the defendants Dawson & Co. acquired title to the agreement executed by the plaintiffs, and to the money thereby secured; *third*, that defendant Simonton, assignee of Dayton, has no title to the agreement mentioned, or to the money thereby secured.

The order denying a new trial is accordingly reversed, and the case remanded for judgment in accordance with the foregoing conclusions.