NOVINGER BANK, Respondent, v. ST. LOUIS UNION TRUST CO., Appellant.

Kansas City Court of Appeals, March 5, 1917.

1. **EQUITY: Interpleader: Trustee in Mortgage.** The trustee in a mortgage to secure corporate bonds who has sold the property under the mortgage and has administered the fund promptly and with dispatch as far as it could, and holds the remainder of the fund, over which contention is made, as a mere disinterested stakeholder ready to pay it to whomsoever it belongs, but not knowing to whom it belongs, and against whom one suit is brought and others are threatened, has the right to seek protection of a court of equity and have the rival claimants interplead, unless something has occurred or exists which, clearly and upon the plainest principles of justice, puts the trustee outside the pale of an equity court's consideration.

2. ———: ———: ———: **Partiality.** Evidence considered and *held* not to disclose partiality on part of a trustee. The fact that he failed to notice that one of a number of bonds was not in controversy and did not pay it over to the party entitled thereto but offered to pay the whole amount into court should not deprive him of the benefit of a court of equity since no harm has resulted to any one and the court can order the one uncontested bond to be paid over to the party entitled thereto and the interpleader had over the rest.

3. ———: ———: **Bill: Sufficiency: Need Not State Rival Claims.** A bill for interpleader need not state the facts upon which the rival claimants to the fund depend with the same particularity required of the claims when they file their plea, but it is sufficient if the bill states the respective claims in such a way as to show that there is ground for them, and a reasonable doubt as to where the money should go.

4. ———: ———: **Amount to be Paid into Court.** Where all of the other bondholders, in settling with the trustee on the distribution of the proceeds of the foreclosure sale, reserved the question of their right to the distributive share of bonds held by a bank, the validity of which was questioned, the trustee is justified in paying into court the entire sum, though only part of the other bondholders had formally notified him that they questioned the validity of the bonds in dispute.

5. ———: ———: ———: **Privity of Title.** All holders of bonds secured by a mortgage on corporate property assert a right to the fund resulting from a foreclosure sale, which comes from the same source, and therefore can be required to interplead as to their rights to the fund, though there is no privity in the title of the respective parties to the bonds held by them.

6. ———: ———: ———: **Defenses: Dispute Over Amount: Interest in Fund.** A real dispute between the party seeking interpleader and those claiming the funds, is fatal to the right to have the claimants interplead. But the right to interpleader cannot be defeated by an unfounded assertion that there is more due from the trustee than is admitted by him and therefore an answer by way of cross-bill for interpleader, which alleges that the plaintiff in his complaint claimed more than was due, not in good faith, but solely to defeat defendant's right to an interpeader, is not demurrable. And a trustee under a mortgage securing corporate bonds does not, by paying the expenses of the sale, including the amount of the trustee's commission as fixed by statute, retain an interest in the fund which defeats his right to have the claimants thereto interplead.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

REVERSED AND REMANDED.

*Campbell & Ellison* for appellant.

*Highbie & Mills* for respondent.

TRIMBLE, J.—The Rombauer Coal Company exe-
.cuted a mortgage upon its coal mine and plant to the
defendant, The St. Louis Union Trust Company, as
Trustee, to secure 200 bonds of $500 each, payable to
bearer, and due March 1, 1916. Upon default in the
payment of any interest or of any of the principal of any
of said bonds, the trustee was authorized by said mort-
gage to sell the mortgaged property at foreclosure
sale, after notice, at the court-house door, in the usual
manner of such sales (except that the sale might be
conducted by any agent appointed by the St. Louis
Union Trust Company), and upon such sale, after
paying the costs and expenses of executing the trust,
it was the duty of said trustee to apply the proceeds
of such sale equally to the payment of all the bonds
then outstanding and owned by said company.

The Coal Company defaulted in the payment of its
bonds, and on the 6th of July, 1914, the Trustee in the
mortgage, through its agent Orr, defendant herein, sold
said property at foreclosure sale for $32,000.

On the same day, and within a few hours after the
sale and before the purchase money had come into the
trustee's hands and before the distributive share of
each bondholder could be ascertained, plaintiff, as the
holder of nine of said bonds, brought this suit against
defendants to recover the sum of $1440 with interest
and costs, as its distributive share. It will be observed
that $1440 is the precise amount to which the holder
of nine bonds would have been entitled if the entire
$32,000 was to be distributed instead of the net amount
left after deducting the trustee's commissions and the
expenses of sale.

Immediately upon receipt of the purchase price
of $32,000, the trustee added thereto the sum of $688

196 M. A.—22

in the sinking fund in its hands (presumably created under and by the terms of the mortgage), making a total sum of $32,688, which, after deducting $500.70 expenses of sale, left $32,187.50 for distribution among the holders of the outstanding bonds.

Thereupon the trustee made a statement of its accounts showing that the nine bonds claimed by plaintiff were entitled to a payment of $1451.52, which, as will be observed, is $11.52 more than the amount claimed by plaintiff in its suit as then standing. Before any distribution could be made, the other bondholders, namely, R. E. Rombauer holder of seventy-four bonds of the face value of $37,000, the Goodman Manufacturing Company holder of thirty bonds of the face value of $15,000, and the German Savings Institution holder of forty bonds of the face value of $20,000, notified the trustee that plaintiff was not entitled to any distributive share on $2500 of the bonds held by it because they were issued in violation of section 8, article 12, of the Missouri Constitution which provides that no corporation shall issue stock or bonds, except for money paid, labor done or property actually received and for no other consideration whatever; and that $1500 more of the bonds claimed by plaintiff were held by it in violation of its agreement with the Rombauer Coal Company without color of title thereto.

Thereupon the trustee filed an answer to plaintiff's petition setting up the foregoing facts, and stating that it had in its hands $1451.52, or $11.52 more than plaintiff was seeking, for distribution on said nine bonds; that it could not pay said amount to plaintiff without incurring liability to the other claimants, and asked that it be allowed to pay said sum into court and the rival claimants be required to interplead therefor.

Plaintiff demurred to this answer and was sustained, but immediately thereafter filed an amended petition against defendants to recover its distributive share on said nine bonds claimed by it, alleging, however, that, in addition to the $32,000 received as the

purchase price of the mortgaged property, defendants "had and still have in their hands the further sum of $1000" making a total of $33,000 for distribution ratably on plaintiff's said bonds, out of which plaintiff prayed that it have and receive $1485 together with interest and costs.

To this amended petition filed by plaintiff, the defendant, St. Louis Union Trust Company, filed an answer and bill of interpleader in which it set up the same facts hereinbefore stated as being contained in its former answer. It further set up that it had exhibited its accounts as trustee to all the bondholders of the Rombauer Coal Company, who found the same to be just and true, and that bondholders to the amount of $95,500 (which was all of the bonds except $4500, or the nine bonds claimed by plaintiff), had settled with the defendant as trustee leaving, however, the question as to what amount plaintiff was entitled to under its claim to the nine bonds subject to further determination; that upon a trial of the case it would appear from the undisputed evidence that the total amount received by said defendant from all assets of the mortgagor was $32,688, and that the total net sum for distribution was $32,187.30, and that there could be no dispute as to the amount received for distribution since its correctness was admitted by all of the bondholders including the plaintiff; that the allegation in plaintiff's amended petition that the trustee had received $1000 in addition to the $32,000, making a total of $33,000 for distribution, was not made in good faith but for the sole and only purpose of making it appear that there is a dispute as to the amount of money in said defendant's hands for distribution, and only for the purpose of depriving defendant of its right to file a bill of interpleader.

The answer and bill of interpleader further alleged that owing to the conflicting claims of the parties, as hereinbefore stated, the defendant trustee was in danger of being harrassed by suits of the various rival claimants of the funds in its hands. It, there-

fore, prayed that it be permitted to pay said $1451.52 into court and the rival claimants be required to interplead therefor.

To this second answer and bill of interpleader the plaintiff demurred as before. The trial court sustained it and the trustee stood upon its answer and bill. Thereupon, the court rendered judgment for $1581.75, being not only for the full amount claimed by the plaintiff but also for nearly $100 interest, together with costs. The defendant trustee has appealed.

The demurrer to the answer and bill of interpleader admits all facts well pleaded therein. It is admitted, therefore, that the defendant Trust Company was trustee in a certain mortgage, that it was foreclosed and the property sold for a certain sum, that in a few hours after the sale and before any distribution could be made, plaintiff sued the trustee for a distributive share of the gross sum received for the property without allowing any deductions for trustee's commission (fixed by statute, sec. 2856, R. S. 1909), or expenses of sale; that the trustee was notified by certain bondholders not to pay plaintiff on the bonds claimed by it for the reasons hereinabove stated; that said trustee has settled with the other bondholders except as to whom should be paid the distributive share on the nine bonds claimed by plaintiff; that for such payment it has the sum of $1451.52 which it is desirous of paying to whomsoever is entitled thereto but cannot do so on account of the conflicting claims aforesaid; and that to protect itself from being harassed by numerous suits it asks to be allowed to pay the money into court and have the rival claimants interplead therefor. In other words, defendant is the trustee of a fund which it has administered promptly and with dispatch as far as it could, and it holds the remainder of the fund, over which the contention is made, as a mere disinterested stakeholder ready to pay it to whomsoever it belongs but not knowing to whom it should be paid, and consequently it seeks the protection of a court of equity. And this protection

is sought after one suit has already been brought against it and it stands exposed to the hazard of still others. It would seem that, under these circumstances, the situation of the trustee would call for the interposition of a court of equity unless something has occurred or exists which, clearly and upon the plainest principles of justice, puts the trustee outside the pale of an equity court's consideration. As a trustee placed, through no fault of its own, in circumstances under which it has reasonable doubt as to the proper disposition of funds in its hands, it has a right for its own protection, to apply to a court of equity. [Hayden's Extrs. v. Marmaduke, 19 Mo. 403.] "A bill of interpleader is an invention of equity jurisprudence, and is designed to relieve a party who holds in trust a fund to which there are several claimants and who in good faith is in doubt, and has reasonable grounds to doubt, as to whom it should be paid." [Little v. St. Louis Union Trust Company, 187 Mo. 281, l. c. 298.] The facts in the case at bar, as to the situation of the trustee, are, in many respects, very similar to the case last cited.

But it is said the answer shows that the Trust Company is not an impartial and disinterested stakeholder. There is nothing in the facts stated which disclose interest or partiality. On the contrary, the facts show that the trustee has at all times performed its duties promptly and impartially and has been willing, from the first, to turn over the entire fund in its hand which was more than the plaintiff at first claimed even on the gross amount of the purchase price instead of the net amount left after the payment of expenses fixed and required to be paid by law. Plaintiff says that only eight of its nine bonds were questioned by the other claimants, and therefore it is entitled to its *pro rata* share on that one bond at least, and that, therefore, the trustee should have paid that share to it without question, and, since it has not done so, defendant is partial and loses its right to seek the aid of equity. But, defendant offered to pay the whole

fund into court. The failure of the trustee to observe that perhaps one bond was not questioned, did not result in any harm to plaintiff or advantage to either the trustee or the rival claimants. If it appears that plaintiff's right to one bond was not questioned, the court could direct that the amount due on it be at once paid to plaintiff and that the different claimants interplead for the remainder. To deny the trustee the refuge afforded by a court of equity merely because of this fact, which could result in no possible harm to anyone, would indeed sacrifice defendant's equitable rights to the most attenuated technicality.

It is claimed that the answer is bad on demurrer because the grounds upon which the other claimants object to the plaintiff receiving a distributive share upon the bonds it holds are not stated with greater particularity; that, as stated, they are mere conclusions of law and tender no issue. But it is not necessary for the one praying for an order of interpleader to state the facts upon which the rival claimants depend, with the same particularity required of the claimants when they file their interplea. All that is necessary in this regard is that the bill of interpleader shall state the respective claims in such way as to show that there is some ground for their contention and a reasonable doubt as to whom the money shall go. [Robards v. Clayton, 49 Mo. App. 611.] When it appears that there is a substantial doubt or hazard of payment, this is sufficient. [Smith v. Grand Lodge A. O. U. W., 124 Mo. App. 181, l. c. 201; Woodmen of the world v. Wood, 100 Mo. App. 655.]

It is further urged that as the holders of only 144 of the bonds have claimed a right to the fund, and the holders of the other fourty-eight, (being the remainder of the 200 except plaintiff's nine), have not asserted any claim to plaintiff's nine bonds, therefore the proportion which might have been, but was not, claimed by the holders of the forty-eight bonds should have been paid to plaintiff in addition to the amount due on the one bond hereinbefore mentioned. What has been said

with reference to the failure to pay the amount due on the one bond applies to this point as well. Besides, in the bill of interpleader, it appears that all of the bondholders, other than plaintiff, in their settlement with the trustee, reserved the question of the validity of plaintiff's right to payment on said nine bonds; and, consequently, the holders of the other forty-eight bonds may, at any due and proper time, assert their right to a share in the fund, if plaintiff's rights should prove to be invalid.

We do not understand plaintiff's point that there is no privity of rights or of contract between the parties, and that the claims to the fund in dispute are not dependent or derived from a common source. It is true the various claimants do not assert their right to a share in the fund through any claim of title to the *bonds* plaintiff claims to own. They assert their right to the *fund* in the trustee's hands, which fund was derived from a sale of property in foreclosure of a mortgage. That fund belongs to the owners and holders of those bonds which had been legally issued and had become valid obligations of the mortgagor and liens on the property. If the bonds claimed by plaintiff never became valid obligations, then the fund in question belongs to those bondholders whose bonds are valid, up to the extent of their claims. Hence all claimants assert a right to the same fund and their respective titles come from the same common source. It is not indispensable that the identity of the thing claimed shall be absolute and perfect throughout. [11 Ency. of Pl. and Pr. 454.]

The most important point raised by plaintiff is that there is a dispute between plaintiff and the trustee as to the amount of the fund. The rule is well settled that if there is a real dispute between the party seeking to obtain an order of interpleader and those claiming the fund, such dispute is fatal to the right to have the claimants interplead. But is there any real dispute here? The plaintiff in its original petition asks for its full proportionate share of the gross amount of

the purchase price without regard to any expenses of sale which necessarily must be paid and which are fixed by law. The trustee answers that it has a greater amount in its hands that the plaintiff asserts, whereupon the plaintiff files an amended petition stating that the trustee received $32,000 as the purchase price of the property, and an additional $1,000 from elsewhere, without stating any facts to show where it came from or to explain its source. The trustee, in its second answer and bill of interpleader, says the allegation that it received $1000 is untrue and is not made in good faith but solely for the purpose of defeating defendant's right to an order of interpleader. If this allegation is well pleaded, then · plaintiff's demurrer admits its truth, that is, admits that the apparent dispute is a mere sham and not a real dispute.

If a bill of interpleader can be defeated by merely *asserting* that the fund is larger in amount than that stated by the party seeking to obtain an order of interpleader then a court of equity is remarkably helpless and unable to ascertain whether the circumstances are such as call for its interposition. In such case the party seeking to obtain an order of interplea would either have to admit a larger amount than was really due from him or forego his right to the equity proceeding. And indeed if he did admit a larger amount than the true one in order to obtain his right, there would be nothing to prevent a plaintiff from amending and *asserting* a still larger amount and so on since there is no limit to voluntary amendments.

But we are of the opinion that a court of equity is not so hampered in its duty to ascertain whether its jurisdiction should or should not be exercised. When a bill of interpleader is filed it calls for at least one and perhaps two litigations. [Roselle v. Farmer's Bank of Norborne, 119 Mo. 84, l. c. 92.] The first is between the party seeking the order of interpleader and the one opposing it. If the circumstances are such that the prayer of the bill of interpleader should be

granted except on account of a dispute as to a fact governing and determining whether such right should be granted, then the court should ascertain whether such dispute is real or feigned. Otherwise, the court would have no means of ascertaining whether its equity powers should be exercised or not. We are of the opinion that under circumstances like the present, where it is alleged that the plaintiff's claim, that the amount of the fund is larger than that stated by the trustee, is not made in good faith but solely to defeat the right to an order of interpleader, the court should investigate the facts far enough to ascertain whether such claim was made in good faith or not, or had a reasonable foundation for its basis.

We do not understand that the trustee claims an interest in the subject of the controversy. The only subject of controversy in which either the plaintiff or the other bondholders can claim an interest is the fund remaining after the expenses of the sale have been paid. The law provides for these expenses, and no sale could be had if expenses were not incurred and paid. So that when the trustee paid these legal expenses this was not retaining an interest in the fund in which plaintiff or the other bondholders could have a right to participate.

The trustee in this case seems to have acted fairly, punctually and with due consideration for the rights of all. Through no fault of its own it has been placed in a position where it has a right to seek the aid of a court of equity or at least to have that court ascertain whether there is in fact any real ground for closing its ears against the prayer of the bill. If a trustee who has foreclosed a mortgage and has funds in his hands to which there are rival claimants, and of whose rights he is in doubt, cannot come into a court of equity and obtain its aid and protection, then he is indeed in hard lines. And if his right to an order of interpleader can be defeated by a mere unexplained and unsupported assertion that the amount in his hands

is larger than he asserts it to be, then trustees will be running very much greater risks and hazards than those to which they have heretofore been exposed.

The judgment is reversed and the cause remanded. The other judges concur.