EQUITABLE LIFE INSURANCE COMPANY of Iowa, Appellee, v. PEARL D. JOHNSTON, Appellant, and RAYMOND JOHNSTON et al., Defendants, Appellees.

No. 42968.

DECEMBER 17, 1935.

OPINION ON REHEARING NOVEMBER 17, 1936.

See, also, In re Estate of Johnston, 220 Iowa 328.

Phineas M. Henry and Ralph A. Church, for appellee, Equitable Life Insurance Company.

Frank F. Wilson, for all other appellees.

W. S. McCaull, Rolla Shewmaker, O. M. Slaymaker, R. E. Killmar and D. D. Slaymaker, for appellant.

MITCHELL, J.—Herbert T. Johnston had a policy with the plaintiff company in the amount of $10,000, providing for the payment of said amount upon his death, to Pearl D. Johnston, his wife, if she survived him, otherwise to his sons, Raymond Johnston and Rupert T. Johnston. Said policy contained a provision for double indemnity in case of accidental death. Attached to the policy and made a part thereof, was what was known as a "direction for settlement", in which the insured directed that if his wife survived him the proceeds of the policy should be held by the company and the interest income thereon should be paid to her during her lifetime, and upon her death the principal sum should be paid to their sons, Raymond Johnston and Rupert T. Johnston, in equal shares, or the survivor of them, or, if one of them died leaving issue, the share should be paid to said issue.

On June 7, 1934, Herbert T. Johnston died as the result of a gunshot wound inflicted by his wife, which she claimed was accidental. Raymond Johnston was appointed administrator of his father's estate, and Frank F. Wilson was appointed guardian

of Rupert T. Johnston, the minor son of the insured. The administrator, the guardian, and Raymond Johnston as an individual, filed proof of death with the insurance company under said policy, claiming the sum of $20,000 on account of the death of the insured, and demanded a cash settlement. Subsequently Pearl D. Johnston also filed proof of death, claiming the double indemnity benefit and demanding the cash value of the policy based on her life expectancy. The insurance company thereupon filed its petition in the district court of Ringgold county, Iowa, being the court in which the estate of Herbert T. Johnston was being administered, and admitted liability for the face value of the policy in the sum of $10,000, less the semiannual premium due thereon on the 30th day of June, 1934, in the sum of $95.50. After the filing of this petition and after service of notice upon her, Pearl D. Johnston commenced an action in the district court of Decatur county against the insurance company, claiming interest income to date under the terms of the "direction for settlement" attached to the policy. Thereupon the insurance company amended its petition and alleged that by reason of the death of the insured it became obligated to pay the double indemnity benefits also, in the further sum of $10,000, or a total sum of $19,904.50. In this amendment the insurance company prayed that all of the defendants be temporarily enjoined and restrained from instituting or prosecuting any suit against the insurance company on account of said policy. The defendant, Pearl D. Johnston, filed a resistance to the application for temporary injunction, and denied all the allegations of said petition, stating that she had at all times been a good-faith resident of Decatur county, Iowa, and that on or about January 18, 1935, she brought an action in the district court of Decatur county on the policy involved in this action, and that same was still pending; that said action had been commenced before plaintiff had prayed for an injunction against her; that plaintiff had a plain, speedy and adequate remedy at law by appearing in the case at Decatur county and there bringing in all adverse claimants to the insurance money, and that all of said matters could be settled in that one action. She also claimed in her resistance that the insurance company did not admit the full liability claimed by defendants and therefore was not an indifferent stakeholder, as it disputed the amount due and there was there-

fore a controversy between the plaintiff and defendants as to the amount due.

A hearing was held and the lower court ordered that a temporary injunction issue, enjoining the defendants and each of them from instituting or prosecuting any suit or proceeding in any court whatsoever against the plaintiff for or on account of the proceeds of the policy of life insurance issued by plaintiff company on the life of Herbert T. Johnston. The court also enjoined the defendant Pearl D. Johnston from further prosecuting the suit she had brought in the district court of Decatur county, Iowa, against the plaintiff, and ordered that the said writ was to issue upon the filing of a bond in the office of the clerk in the sum of $1,000. Bond was filed, and a writ of injunction was issued.

Pearl D. Johnston, being dissatisfied, has appealed to this court.

I. It is the claim of the appellant that the insurance company does not admit the full liability as to the amount due on the policy; that there can be no action of interpleader except in cases where the stakeholder admits full liability and puts himself in the position of being indifferent in the controversy. Appellant claims the income from the entire $20,000. The other defendants claim the entire $20,000, and that they are entitled to it in a lump sum. The insurance company admits liability for the entire $20,000 less the semiannual premium of $95.50. The appellant claims that under these circumstances the appellee company is not entitled to a bill of interpleader.

By its pleadings in this case the insurance company admits full liability of the amount claimed in the policy, to wit: $10,000 payment and $10,000 because of accidental death, but it claims the right to deduct the sum of $95.50, the amount of the semiannual premium due on the policy on June 30, 1934, which was not paid and which the company states was the unpaid portion of the premium for the current insurance year; that it was entitled to deduct this amount from the proceeds of the policy according to the express provisions of same, which are as follows:

"Any unpaid portion of the premium for the current insurance year in which the death of the insured occurs will be deducted in any settlement thereon."

The amount that is due under the policy is what the policy

itself says is due; that is, what all the terms and provisions of the policy say is to be due. The amount due in this case is not only the face of the policy but the face of the policy plus the double indemnity less all deductions provided for by the policy. In other words, it is a question of construing the policy, and that is a question solely for the court. Certainly, it is not a complicated matter. Any one with a knowledge of simple arithmetic can determine the amount due.

This question was before the Circuit Court of Appeals of the 5th Circuit in the case of McNamara v. Provident Savings Life Assurance Society, 114 Fed. 910. The question involved was whether the action was a bill of interpleader under which the appellee company would be entitled to an attorney's fee out of the fund. There was a demurrer to the petition. Commencing on page 913 the court said:

"The contention is that as the complainant has not paid in the full $10,000 named in the policy, but has retained the sum of $337.50, the amount due for unpaid premiums as stipulated in the policy, the amount so retained is in contest, and to that extent the complainant is interested in the subject-matter of the suit. The policy expressly stipulates that on the death of Robert McNamara the insurance company shall pay to the legal representatives or assigns of said McNamara the sum of $10,000, less any indebtedness on account of the policy. On the death of McNamara $337.50 in unpaid premiums became due on account of the policy, and thereby the insurance company was bound by its contract to pay to the legal representatives and assigns of McNamara the sum of $10,000 less said premiums, to-wit, $9,662.50; and this sum, still following the terms of the policy, became due on the 18th day of February, 1901, 90 days after proof of death was received, and it, together with 6 per cent interest thereon from that day to the filing of the bill, was paid into court. As the contract was specific, and the amount due was certain (and that is always certain which can be made certain), there was no room for any contest as to the amount due under the policy, and any interest of the complainant in the subject-matter of the suit arising from the source indicated is too remote to be seriously considered. * * * The interest in the subject-matter of the suit sufficient to deny the complainant the right to bring a strict bill of interpleader must be a substantial, contested

right; otherwise, no such bill, however meritorious the case, could ever be entertained. In this case, neither by the bill nor by any legitimate inference to be drawn from the evidence, does it appear that the complainant had any substantive or substantial interest in the subject-matter of the suit. Where no such interest is shown, and the complainant's acts in the premises have been free and aboveboard, and conducive to equity, a solicitor's fee may be allowed. Groves v. Sentell, supra [153 U. S. 465, 14 S. Ct. 898, 38 L. Ed. 785] ; Louisiana State Lottery Co. v. Clark (C. C.) 16 Fed. 20; Trustees v. Greenough, 105 U. S. 527, 535, 26 L. Ed. 1157; Spring v. Insurance Co., 8 Wheat. 268, 5 L. Ed. 614; Daniel v. Fain, 5 Lea (Tenn.) 258.''

The appellant in the case at bar is asserting her right under the contract of insurance and is necessarily bound by the conditions of said contract, providing for the deduction of the unpaid portion of the premium for the current insurance year. There can be no possible contest as to this deduction and there can be no question as to the amount.

In the case of Novinger Bank v. St. Louis Union Trust Co., 196 Mo. App. 335, 189 S. W. 826, 829, that court said:

''If a bill of interpleader can be defeated by merely asserting that the fund is larger in amount than that stated by the party seeking to obtain an order of interpleader, then a court of equity is remarkably helpless and unable to ascertain whether the circumstances are such as call for its interposition. In such case the party seeking to obtain an order of interplea would either have to admit a larger amount than was really due from him or forego his right to the equity proceeding. And indeed if he did admit a larger amount than the true one in order to obtain his right, there would be nothing to prevent a plaintiff from amending and asserting a still larger amount and so on, since there is no limit to voluntary amendments.

''But we are of the opinion that a court of equity is not so hampered in its duty to ascertain whether its jurisdiction should or should not be exercised.''

And so in the case at bar the amount which the insurance company asks the right to deduct is specified in the insurance policy, the contract upon which the appellant bases her right of recovery. There can be no dispute in regard to that amount. To

say that the appellee company is an interested party and therefore not entitled to commence this action of interpleader, would be to admit that a court of equity would be helpless to grant interpleader if the mere assertion of an amount greater than the amount claimed to be due would deprive the stakeholder of this remedy.

II.   It is the claim of the appellant that the appellee company is not a disinterested stakeholder, entitled to interplead, because the appellee company asks that before any deposit be made there first be tried to the court and determined as between the appellee company and defendants the nature and extent of appellee company's liability; that is, whether the company's obligation is to retain the proceeds and pay appellant interest thereon during her lifetime and execute a supplementary contract, or whether it is appellee company's obligation to pay the amount in cash into court.

The appellee company claims that it does not ask that the nature and extent of its liability be determined by the court as between the company and defendants. The prayer of the petition of appellee company is that the defendants be required to interplead to settle their rights, and upon determination of the respective rights of defendants the appellee company be ordered to deliver the supplementary contract or pay the entire fund into court.

The principal question for determination in the interpleader suit is whether the widow of the insured is debarred from any interest in the proceeds under section 12033 of the 1931 Code, which provides that no beneficiary of any policy of insurance who feloniously takes the life of the insured shall take the proceeds of the policy.   If the court finds that the widow did not feloniously take the life of the insured, then this question is disposed of, and the proceeds of the policy are payable as provided for by the insured in the policy itself, namely, the interest income to the widow during her life and the principal sum at her death to the children or their issue.   If the court finds that she did feloniously take the insured's life, then the court will have to determine as between the administrator and the heirs whether the administrator is entitled to the proceeds of the policy in a lump sum or whether the administrator is entitled to the interest income during the life of the widow, which she would have received if she had been permitted to share in the proceeds of the

policy. The court might find that the effect of her loss of interest would be to vest the entire proceeds in the children in a lump sum at the present time. The company offers to do whatever the court says it should do, and as far as it is concerned, it cares not whether the money be paid in a lump sum or whether it should hold the money under the "direction of settlement". It is possible that payment in one form or the other might in the course of time be a benefit or a detriment to the appellee company. If interest rates continue to go down it would cost the company money to hold the proceeds and pay guaranteed interest thereon. If they go up, the company might make money. But we are not confronted with this question here because the company alleges that it is willing to abide by the decree of the court, which determines the relative rights, not as between plaintiff and defendants, but as between the defendants themselves. The company by its alternative offer simply says that it does not know what to do and asks the court to tell it. After all, that is the court's task. The insurance company has no interest in this lawsuit other than to be protected against having to defend several lawsuits and in seeing that the money which it holds is paid to the right parties, the right parties to be designated by the court.

III. It is the claim of the appellant that the appellee company has a plain, speedy, and adequate remedy at law, by bringing Raymond Johnston and Rupert T. Johnston into the case brought by Pearl D. Johnston in Decatur county, all as provided for by section 11002 of the 1935 Code.

This interpleader suit was commenced before Mrs. Johnston commenced her suit in Decatur county. Furthermore, the statuté does not supersede the equitable remedy.

In Hoyt v. Gouge, 125 Iowa 603, at page 604, 101 N. W. 464, this court said:

"While there is no express statute authorizing interpleader, except in actions of replevin * * * yet there is a general statute providing that a plaintiff may prosecute his action by equitable proceedings in all cases where courts of equity before the adoption of the Code had jurisdiction. * * * In Stephenson v. Stephenson, 64 Iowa 534, 21 N. W. 19, we recognized the continued existence of such a remedy, although there was no direct challenge there of the right of a court to do so. But it seems to be the general rule everywhere that the action of interpleader is

concurrent with, and is not superseded by statutory remedies authorizing defendants in law actions to bring in other parties, or to have other parties substituted. Crane v. McDonald, 118 N. Y. 648, 23 N. E. 991; Board of Education v. Scoville, 13 Kan. 17; Cullen v. Dawson, 24 Minn. 66; Fahie v. Lindsay, 8 Or. 474; Barry v. Ins. Co., 53 N. Y. 536; Lane v. New York Life Ins. Co., 56 Hun 92, 9 N. Y. S. 52.''

In 4 Pomeroy's Equity Jurisprudence, 4th Edition, section 1329, at page 3186, we find:

''Interpleader in legal actions. In England and in many of the American states a summary mode of interpleader by motion and order in certain legal actions is authorized. These statutes substantially provide that in actions specified the defendant may show by affidavit that the same thing or money is claimed by another person besides the plaintiff; that he has sued or threatens to sue; that defendant is not in collusion with him; and that defendant is ready and willing to bring the thing or money into court. The court on motion may order such claimant to be substituted as defendant in the action in place of the original defendant. It is universally held that these statutes do not at all limit nor affect the equitable jurisdiction by suit; they merely furnish another special, cumulative, and concurrent remedy.''

In 15 Ruling Case Law, section 18, pages 235 and 236, the writer says:

''This statutory remedy of interpleader does not oust courts of equity of their jurisdictions to proceed by bill of interpleader; the remedy is merely concurrent and cumulative * * *.''

In Board of Education v. Scoville, 13 Kan. 17, cited with approval by this court in the Hoyt case above cited, the court in construing the effect of the Kansas statute said:

''It is claimed however, that section 43 of the civil code furnishes an adequate remedy. We do not think so. Under that action the holder of the fund is not entitled to any remedy until he is sued, and the commencement of the suit may be postponed almost indefinitely. If the holder of the fund has no remedy except the one given to him by section 43 of the civil code he may be compelled for an almost indefinite period of time to hold said funds always ready to pay the same to the person entitled there-

to, and to pay it at any time when called upon with accumulated interest, although the holding of the same may be of no benefit to him. * * * Sometimes undoubtedly the remedy given by said section 43 of the code is an adequate remedy; but even then we do not think that the legislature intended that it should take the place of the action of interpleader. In such cases it was probably intended that the two remedies should be concurrent. * * * But it is claimed that the plaintiff in this action (the school district) had already been sued by the defendants, Trimmer & Thompson, and that therefore the plaintiff as defendant in that suit had a right under said section 43 of the code to have all the other parties brought in and have them interplead as to who should receive the fund, and as to how much each should receive; and, therefore, that the plaintiff had another adequate remedy. * * * But it cannot be that said section was intended absolutely to supersede the action of interpleader, even in a case like the one at bar. If such were so, it would lead to insuperable difficulties in practice.''

It thus appears from the authorities above cited that the remedy given by statute does not supersede the ordinary equitable remedy; that it does not make a particle of difference whether the bill of interpleader is filed before any suits have been commenced against the company on the policy, or whether it is filed after one or more of the conflicting claimants have commenced an action at law against the company.

The statutory remedy is not applicable to the situation in the case at bar because the statute contemplates that there shall be but one adverse claimant who may be substituted as defendant, whereas in the case at bar there are five adverse claimants. The statute contemplates the claims of defendants shall be claims to the same exact fund, and the statute is not applicable because there is a ''direction for settlement'' attached to the policy and the rights of action of the various parties are not for the face value of the policy altho they are all based on the policy. Under these circumstances statutory remedy under section 11002 is not applicable and is not an adequate remedy at law.

IV. Lastly, the appellant claims that the lower court erred in issuing the writ of injunction.

The very purpose of an action of interpleader is to prevent a multiplicity of suits, and a double or multiple vexation with

respect to the same liability. If the various claimants can proceed with law actions against the plaintiff in the interpleader suit at the very same time that the interpleader suit is pending, the remedy of interpleader is of no value whatsoever. It is aimed to prevent this very thing. In the case at bar Mrs. Johnston has a suit pending in Decatur county.

There are other claimants to this money. They might commence lawsuits and thus the insurance company might be confronted with participating in several lawsuits, all of which would be to decide the same question. This is the purpose of an action of interpleader, and without the right to a writ of injunction the petition of interpleader would avail the insurance company nothing.

Equity courts have always had the right to use the writ of injunction as an auxiliary remedy. Without it the decree of interpleader would be worthless, for the claimants might proceed to sue the stakeholder in other courts.

In Brown v. Marsh, 98 Fla. 253, 123 So. 762, an interpleader suit, at page 764, the court said:

"The effect of the temporary restraining order which was afterwards made permanent, was to abate all actions brought or contemplated on the part of defendants to recover from the complainant any portion of the moneys held by him but paid into the registry of the court. The facts here present ample ground for bill of interpleader. If this be true, the bill of interpleader would avail appellee nothing unless the subject matter of the actions brought or contemplated against him could be held in abeyance pending the disposition of the interpleader."

In Seaboard National Bank v. Reid, 172 App. Div. 135, 158 N. Y. S. 250, at pages 252, 253, this court said:

"There can be no doubt that a court of equity in a proper case, has the power to restrain parties by injunction from proceeding in other actions during the pendency of the suit in which the injunction is granted. * * * By taking this course a multiplicity of actions is avoided, which is always desirable when a complete determination can be obtained in one action."

In the case at bar the bill of interpleader would have been of no avail if the writ of injunction had not been issued. Mrs. Johnston, after this action was commenced, also commenced an

action in a different court. The other claimants might have done likewise. To prevent these various suits the lower court issued the writ of injunction, and in so doing was right.

It therefore follows that judgment and decree of the lower court must be, and it is hereby, affirmed.—Affirmed.

PARSONS, C. J., and ALBERT, ANDERSON, DONEGAN, HAMILTON, and STIGER, JJ., concur.

RICHARDS, J., dissents.

RICHARDS, J. (dissenting)—The majority opinion holds in substance that plaintiff's petition is a bill of interpleader. But the writer is of the opinion that the petition was neither such bill of interpleader as was recognized as an equitable remedy within the jurisdiction of courts of chancery before the adoption of the Code, nor is it recognizable as conforming to any statutory procedure. The petition fails as a pre-Code bill of interpleader in a vital respect, that is, the plaintiff does not appear as a stakeholder wholly without interest, direct or indirect, in the outcome of the issues in the action. Hoyt v. Gouge, 125 Iowa 603, 101 N. W. 464; City of Montpelier v. Cap. Sav. Bank, 75 Vt. 433, 56 A. 89, 98 Am. St. Rep. 834; Groves v. Sentell, 153 U. S. 465, 14 S. Ct. 898, 38 L. Ed. 785. The reason lies in the plaintiff's interests in the following issues involved in the cause of action stated in the petition.

First, the policy of insurance provided that the insurer may deduct from the amount of the policy any unpaid premiums. While there is no controversy presented as to the right of deductions if there are premiums which are unpaid, because that right is a part of the policy itself, nevertheless the question of payment or nonpayment of these premiums was a controversial fact not settled by the terms of the policy. This was a controversial issue to be determined by evidence of payment or nonpayment of premiums subsequent to the issuance of the policy. Consequently plaintiff was not a disinterested stakeholder because in its petition it proposed to have adjudicated whatever such controversy there might be. The case of McNamara v. Prov. S. L. Assur. Soc., (C. C. A.) 114 Fed. 910, cited in the opinion seems to assume the liability for premiums in that case, without discussion of a situation in which nonpayment is controverted by the beneficiaries.

Second, the petition sets out that plaintiff's liability is uncertain and not determined because its liability is one of two things, either to pay twenty thousand dollars in cash after deducting premiums unpaid, or to pay one of the beneficiaries interest on that amount at a fixed rate during her lifetime, the $20,000 being in that event not payable before the end of such life. The petition prays that this question be tried to the court and the nature of plaintiff's liability determined. This is a part of the relief sought by plaintiff. It cannot be said that it was a matter of pure indifference to the plaintiff whether it presently paid the $20,000 or deferred the payment thereby becoming liable to pay a fixed rate of interest for a period that might extend over a great many years. It is a matter of common knowledge that tendencies in interest rates are such that payment of interest on the $20,000 for possibly a long period of years at a pre-agreed fixed rate would involve the element of substantial profit or loss to the plaintiff, dependent upon the rate of income that could be safely realized on the money while remaining in plaintiff's hands. In reason it cannot be said that this was a matter to be adjudicated in which plaintiff was a disinterested stakeholder. Welch v. Boston, 208 Mass. 326, 94 N. E. 271, 35 L. R. A. (N. S.) 330. The so-called "offer" in plaintiff's petition that it would comply with whatever the court might determine with respect to plaintiff's liability, begs the question, because after the matter sought to be litigated had been determined the plaintiff would of necessity comply with the decree. While this is termed an "offer" it is not an offer in the sense that plaintiff thereby extends anything to defendants or waives any part of the controversy plaintiff raises in its petition.

Third, the petition seeks as affirmative relief against defendants that upon execution of a supplemental contract between plaintiff and beneficiaries, it be decreed by the court that the original policy thereupon stand canceled and plaintiff relieved from further liability thereunder. This presented an issue made by plaintiff in its own behalf as litigant and not as a disinterested stakeholder. The issue was whether plaintiff was entitled to substitute for the policy a new agreement. If plaintiff prevailed thereon there was necessarily an issue as to what would be the terms of the new contract. The seeking of an adjudication that the old policy and the liabilities thereunder be canceled and that the beneficiaries be dependent thereafter upon

such terms as the court might fix in a new and supplementary contract, is not consistent with plaintiff's role of disinterested stakeholder.

Fourth, the so-called bill of interpleader fails in another respect, that is the money was not brought into court for disposition, but it substitutes for the necessity of so doing a proposal to litigate certain matters in order to determine the rights and duties of plaintiff. The situation made by plaintiff seems to be this. At the commencement of the suit it was not able to bring in the money and was not a disinterested stakeholder because plaintiff sought to litigate first, the character and extent of its liability it had created for itself by its contracts. Admittedly after these controversies had been adjudicated plaintiff then knowing its liability could assume the role of disinterested stakeholder and bring into court whatever was required by the decree. But the question is whether at the commencement of the suit and on the face of the petition itself plaintiff presents a true bill of interpleader. Then is when the test is made. It is not sufficient to say that sometime in the future, after the controversies are determined, plaintiff may then be able to occupy the position of a disinterested stakeholder.

Attention is also called to certain things in the record. When plaintiff's petition was filed it had no semblance to a bill of interpleader because it denied liability for $20,000 demanded by the beneficiaries. The petition alleged the liability was only $10,000. While the issues so stood Pearl D. Johnston, a beneficiary, brought an action on the policy. At that time nothing in the nature of a true bill of interpleader had been filed by plaintiff herein. Subsequently to the filing of the law action by the beneficiary plaintiff amended the petition admitting its full liability of $20,000. The majority opinion states that the insurance company has no interest in this suit other than to be protected against having to defend several lawsuits and in seeing that the money is paid to the right parties. The opinion also states that for these purposes section 11002, 1935 Code, is not applicable. But there is no mention of section 10981, 1935 Code, which requires that when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, it must order them to be brought in. It accordingly appears to the writer that there should not be an inference gained from the opinion of the majority that the plaintiff did

not have a plain, speedy and adequate remedy at law in the law action.

There was good reason for the strict rules applied to bills of interpleader in the early chancery practice. One such reason is suggested by the advantages accorded to the plaintiff, namely, nonliability for court costs, and the payment from the funds to plaintiff of attorney fees. The reasons for strict construction still obtain. The writer would reverse on the ground that plaintiff's petition does not exhibit a true bill of interpleader and consequently plaintiff is not entitled to enjoin the law action.