**METAL TRANSPORT CORPORATION, Plaintiff-Appellant,**

**v.**

**PACIFIC VENTURE STEAMSHIP CORPORATION, Dana Steamship Corporation, World Tramping Agencies, Inc., and Overseas Investors, Inc., Defendants-Appellees.**

**No. 267, Docket 26501.**

United States Court of Appeals Second Circuit.

Argued Feb. 23, 1961.

Decided April 4, 1961.

J. Bond Smith, Jr., New York City (Bigham, Englar, Jones & Houston, and Oscar R. Houston, New York City, on the brief), for plaintiff-appellant.

Alvin A. Berg, New York City, for defendant-appellee Dana Steamship Corporation.

Steve C. Dune, New York City (Cadwalader, Wickersham & Taft, New York City, and John A. Sullivan, New York City, on the brief), for defendant-appellee Overseas Investors, Inc.

. Before HINCKS and MOORE, Circuit Judges, and BRENNAN, District Judge.*

HINCKS, Circuit Judge.

Defendant-appellee Dana Steamship Corporation [Dana] owned a vessel, the S.S. Pacific Venture, which it bareboat chartered to defendant-appellee Pacific Venture Steamship Corporation [Pacific] in March 1959. In October of that year, defendant-appellee World Tramping Agencies, Inc. [World], as Pacific's agent, chartered the vessel to plaintiff-appellant Metal Transport Corporation [Metal] for the carriage of a cargo of manganese ore from Lourenco Marques in Portuguese East Africa to Baltimore, Maryland. According to the terms of the World-Metal charter party, fifty per cent of the estimated total freight payable by Metal would become due upon receipt by Metal of cable confirmation that the bills of lading had been released to its agent, twenty-five per cent would become due upon the vessel's arrival in Baltimore, the balance "to be adjustable and payable on basis of outturn weights."

Contemporaneously with the execution of the World-Metal charter party, Pacific and World assigned the freight to be paid by Metal to defendant-appellee Overseas Investors, Inc., and Metal was informed of the assignment. Also in October, Dana informed Metal that Pacific had defaulted in payment of charter hire and that Dana therefore claimed a lien on the freight. Upon being informed of Dana's claim, Overseas advised Metal that it would not agree to payment to any party other than itself.

On October 29, at the request of Dana, Metal transmitted $5,500 to Dana's agent for "vessel's disbursements." This sum, together with other charges such as "loading and discharging despatch, if any, brokerages and other sums due [Metal] * * *, if any," was to be deducted from freight payable under an addendum to the charter-party executed by Metal, World and Overseas. Dana by the letter of its attorney assented to the deduction of the $5,550 advance but not to other deductions.

In early November, fifty per cent of the total freight became payable according to the terms of the World-Metal charter. Overseas demanded payment thereof, and Dana served Metal with process in an action the object of which was to obtain possession of the freight moneys held by Metal.

Faced with the conflicting claims of Dana and Overseas for the freight, Metal commenced the present action of interpleader under the Federal Interpleader Act, 28 U.S.C.A. §§ 1335, 1397, 2361, in the United States District Court for the Southern District of New York on November 12, 1959. In this action, Pacific and World are nominal defendants only. Metal deposited in the registry of the court below $45,053.58, which sum was fifty per cent of the estimated total freight and hence the entire amount then due and payable.

---

* Sitting by designation.

In December the vessel arrived at Baltimore, whereupon its seamen commenced an action in the United States District Court for the District of Maryland, asserting a lien on the cargo to the extent of the unpaid freight. Although no formal court order required deposit of the balance of the freight in the Maryland court's registry, business reasons for so doing were buttressed by the fact that a judge of the Maryland court told Metal's counsel that if Metal attempted to pay the balance into the New York court's registry "you will be doing that at your peril if you do it now." Metal deposited in the Maryland court's registry $23,740.31, which it deemed to be the balance of the freight.

In March, 1960, Judge Sugarman in the court below denied Metal's motion, made in December, for a permanent injunction restraining proceedings by Dana and Overseas against it for the freight (a temporary restraining order to that effect had been granted by Judge Metzner in November) and for interpleader. His action was on the stated ground that because all the moneys subject to the adverse claims of Dana and Overseas had not been deposited in the registry, the court was without jurisdiction. Missing in the New York registry were (1) the money on deposit in the Maryland registry, and (2) the difference between the aggregate deposit in the two registries on one hand, and the "gross freights" under the charter party ($101,522.37) on the other, that is, $32,672.31 which had been deducted from the gross freights by Metal, as allegedly authorized by the World-Metal charter party.

In May, Metal's motion (in Maryland) to transfer the freight on deposit in Maryland to New York was denied, and Dana (in New York) moved to dismiss the action of interpleader.

In June, Dana's motion to dismiss came on before Judge MacMahon, who regarded Judge Sugarman's March order as controlling and dismissed the action for lack of jurisdiction. This appeal is from Judge MacMahon's order.

As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants. Section 1335 gives the district courts jurisdiction over such actions when a stakeholder has in his possession money or property "of the value of $500 or more," if "two or more * * * claimants * * are claiming or may claim to be entitled to such money or property" and if the stakeholder "has deposited such money * * * into the registry of the court." This language means that the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim. See New York Life Ins. Co. v. Lee, 9 Cir., 232 F.2d 811, 814–815; Austin v. Texas-Ohio Gas Co., 5 Cir., 218 F.2d 739, 745; Westinghouse Elec. Corp. v. United Elec. Corp., 3 Cir., 194 F.2d 770, 772; John Hancock Mut. Life Ins. Co. v. Yarrow, D.C.W.D. Pa., 95 F.Supp. 185, 187; Connecticut General Life Ins. Co. v. Yaw, D.C.W.D. N.Y., 53 F.2d 684.

Metal contends that this case falls within an exception to this general rule. It insists that it has deposited all the money to which either claimant is entitled: it argues (1) that the funds in the Maryland registry are equally as available to the claimants there as the funds in the New York court, and (2) that the $32,672.31 deduction from the gross freights was authorized by the charter party and consented to by the parties.

We hold that to withhold from deposit so much of $32,672.31 as exceeded $5,500 was a fatal jurisdictional deficiency. Claimants did not consent unconditionally to a $32,672.31 deduction, but only to a deduction of $5,500, from the first 50% of the freight, plus other classes of deductions broadly described as allowable, "if any." Moreover Metal's right to the $32,672.31 deduction is disputed. This is not a case in which plaintiff's obligation to the claimants was subject to deductions which were definitely

ascertainable by arithmetical process as in McNamara v. Provident Sav. Life Assur. Soc., 5 Cir., 114 F. 910; Cramer v. Phoenix Mut. Life Ins. Co., 8 Cir., 91 F.2d 141; Equitable Life Ins. Co. v. Johnston, 222 Iowa 687, 269 N.W. 767, 108 A.L.R. 257—cases which the plaintiff invokes.

Here the amount deducted is controverted, substantial and uncertain. For example, one item which Metal seeks to deduct is $3,809.34 for brokerage commissions. But the charter party merely provides that a brokerage commission is due; it is silent on whether it is to be paid by owner or by charterer. Metal's counsel has furnished an affidavit stating that the commissions are "customarily" paid by owners, but we think this question can be determined only after full consideration of all the pertinent facts, the intention of the parties, any applicable rules of law and customs. Another item which Metal seeks to deduct is $1,653.66 for half of the overtime expenditures in East Africa. But under the charter party, overtime charges are to be borne by the party ordering them, unless overtime is ordered by the port authorities in which case they are to be divided equally. Hence Metal is not entitled to this deduction if it ordered the overtime or if the port authorities did not order it. Neither fact in the record below was beyond dispute.

Metal also seeks to place this situation outside the general rule by arguing that since freight money may be proceeded against *in rem* it is to be treated as specific property, not money. But in American Smelting & Ref. Co. v. Naviera Andes Peruana, S.A., D.C.S.D.N.Y., 182 F. Supp. 897, the general rule was applied to a case of freight money. We approve that holding.

Concluding, as we do, that the plaintiff by withholding from deposit its claimed deductions from the gross freight failed to perfect jurisdiction, it is not necessary to decide whether jurisdiction was also defective because of failure to deposit in the New York registry that part of the freight money which was deposited in the Maryland registry.

Metal's final argument is that Judge MacMahon erred in regarding himself bound by Judge Sugarman's earlier order. But even if he were not so bound, the record fully shows that an order of dismissal was imperatively required.

Affirmed.