SHERMAN NAT. BANK OF NEW YORK v. SHUBERT THEATRICAL CO. et al.

(District Court, S. D. New York.    December 5, 1916.)

No. 13,286.

1. COURTS ⬦264(2)—JURISDICTION OF FEDERAL COURTS—ANCILLARY SUIT.

A trustee in bankruptcy obtained an order enjoining a bank from paying out a deposit in which the bankrupt claimed an interest. Afterward another claimant, which was a nonresident, brought an action at law against the bank, which was a citizen of the district, to recover the deposit. Thereupon the bank filed a bill in the nature of a bill of interpleader in the same court, alleging that it claimed an interest in the fund through an assignment from the bankrupt and that there were also other claimants, who were made defendants. It asked an injunction against the prosecution of actions at law, and that the rights of the respective parties in the fund be determined. *Held*, that the effect of the bill was to draw in for a single decision the whole controversy, a part only of which was involved in the action at law, and that the bill was ancillary, and within the jurisdiction of the court, regardless of the citizenship of the other defendants.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 801; Dec. Dig. ⬦264(2).]

2. COURTS ⬦508(1)—JURISDICTION OF FEDERAL COURTS—INJUNCTION AGAINST PROCEEDINGS IN STATE COURT.

Where the jurisdiction of a federal court first attaches to the subject-matter of a suit, as in a possessory suit, Judicial Code (Act March 3, 1911, c. 231) § 265, 36 Stat. 1162 (Comp. St. 1913, § 1242) does not apply, and the court may enjoin prosecution of suits in a state court, which would interfere with the exercise of such jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1418; Dec. Dig. ⬦508(1).]

3. INTERPLEADER ⊙⇒8(2)—PERSONS ENTITLED TO INTERPLEAD—COMPLAINANT'S INTEREST IN FUND.

A bill in the nature of a bill of interpleader may be sustained, although filed by one claiming a partial interest in the fund, and although his claim is of legal cognizance, where an accounting may be required to determine complainant's interest, and there are other and conflicting claims.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. §§ 9, 11; Dec. Dig. ⊙⇒8(2).]

In Equity. Suit by the Sherman National Bank of New York against the Shubert Theatrical Company (a New Jersey corporation), Lee Shubert, Jacob J. Shubert, the Shubert Theatrical Company (a New York corporation), Irving M. Dittenhoefer, trustee in bankruptcy of Theodore A. Liebler and George C. Tyler, copartners as Liebler & Co., and the Welden National Bank of St. Albans. On motion by complainant for injunction and to strike out the defenses pleaded by the Shubert Theatrical Company of New Jersey. Motions granted.

The bill is in the nature of a bill of interpleader, for which the plaintiff claims no original jurisdiction, but only jurisdiction ancillary to an action at law, now pending in this court, in which the defendant herein, Shubert Theatrical Company of New Jersey is plaintiff, and itself is defendant. The allegations regarding the citizenship of the various parties are most inadequate, and, in view of the presumptions against jurisdiction obtaining in this court, they must be taken as though they were as follows: The plaintiff is a citizen of New York; the Shubert Theatrical Company of New Jersey is a citizen of New Jersey; Lee Shubert and Jacob J. Shubert are citizens of New York; the Shubert Theatrical Company of New York is a citizen of New York; Irving M. Dittenhoefer, as trustee in bankruptcy of Liebler & Co., is a citizen of New York; the Welden National Bank of St. Albans, Vt., is a citizen of Vermont. In fact, no allegations of the citizenship of any of the individual defendants are alleged in the bill, but the facts probably correspond with the presumption of law.

The bill asserts that in the month of March, 1912, Liebler & Co., a firm composed of Theodore A. Liebler and George C. Tyler, were indebted to the plaintiff in the sum of $25,000, composed of three notes theretofore executed, and were indebted to the Welden National Bank of St. Albans in the sum of $15,000, composed of three notes for $5,000 each. On the 15th day of March, 1912, Liebler & Co. executed to the plaintiff and to the Welden National Bank of St. Albans, as security for the payment of these notes, a joint assignment of one-half of the interest of such firm in all its share, under a contract hereafter mentioned, in the profits of Shubert Theatrical Company of New York from the production of a play called "The Blue Bird," during the seasons of 1912–1913 and 1913–1914. Such notes were renewed from time to time, and on the 4th day of December, 1914, there were due substantial sums of money to both the plaintiff and the Welden National Bank of St. Albans. Irving M. Dittenhoefer in 1915 was chosen trustee in bankruptcy of Liebler & Co., who became bankrupt on December 4, 1914. The profits of Liebler & Co. arose from an agreement on October 17, 1910, with Shubert Theatrical Company of New York, by which it agreed to pay to Liebler & Co. one-half its own profits from its presentation of "The Blue Bird." During the month of November, 1911, the defendants Lee Shubert and Jacob J. Shubert opened an account with the plaintiff, which contained profits arising from the production of "The Blue Bird" under the agreement between them and Liebler & Co. On December 7, 1914, Dittenhoefer, the bankruptcy receiver of Liebler & Co., served on the plaintiff a certified copy of an order of this court restraining all persons from paying over any funds in which Liebler & Co. claimed interest, and demanded that plaintiff hold all such sums in its possession. The plaintiff refuses to pay to Lee Shubert, Jacob J. Shubert, or

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

any one else, the sums remaining in said account, and on August 2, 1915, the defendant Shubert Theatrical Company of New Jersey, whose connection with the other defendants is now shown, began the action at law in this court upon the deposit, which is mentioned at the outset, and which is still pending. The bill concludes with the allegations that Dittenhoefer, as trustee, has a claim upon the funds; that Lee Shubert and Jacob J. Shubert have the right to draw checks upon the deposit, and the plaintiff has received no release or authorization from either of them to pay the balance; that the Shubert Theatrical Company of New York claims some right to the deposit, as does the Welden National Bank of St. Albans, Vt.; that the plaintiff claims an interest in it by virtue of such assignment; that it is impossible in the action at law to obtain a judgment or decree settling the rights of all the parties hereto.

The answer of the Shubert Theatrical Company of New Jersey, after certain traverses, alleges for a first defense that on February 23, 1909, Liebler & Co. and the Shubert Theatrical Company of New York entered into an agreement, by which Liebler & Co. agreed for five years to present all their plays in theaters controlled by the Shubert Theatrical Company of New York, with certain exceptions, commencing September 1, 1909, in consideration of which Shubert Theatrical Company of New York would assume one-half the expenses of a certain operatic tour, to be undertaken by one Pietro Mascagni, under an agreement with Liebler & Co., and to share in a contract between one Bessie Abbott and Liebler & Co., under which she was to appear in an opera called "Ysobel." The statements of Liebler & Co. to Shubert Theatrical Company of New York at the time of the contract were that Bessie Abbott would appear in such opera for $1,000 a week, and that Mascagni would give his services in connection with the opera for $10,000. In the year 1910 Lee Shubert learned that these statements were intentionally false, and demanded back all the money he had advanced to Liebler & Co. for losses they claimed to have sustained on such tour, and rescinded the contract of the Shubert Theatrical Company of New York with them. Such moneys amounted to the sum of $34,665.20, and they were liable for $25,000 in addition. Yet in October, 1910, the Shubert Theatrical Company of New York promised Liebler & Co. to give them a one-half interest in the profits and losses of "The Blue Bird," on condition that Liebler & Co. should continue booking their plays at the Shubert Theater for five years. On the 10th day of May, 1911, Liebler & Co. asked the Shubert Theatrical Company to pay $25,000, the balance still due under the contract of February, 1909, but told the Shubert Theatrical Company of New York that they intended to book their plays with Klaw & Erlanger. Thereupon the Shubert Theatrical Company of New York procured the discount of the note of Liebler & Co. for $25,000 with the Hudson Trust Company, and charged the same against the interest in "The Blue Bird," but agreed that, if Liebler & Co. should carry out the agreement to book their plays, he would divide the profits of "The Blue Bird" for the season ending June, 1912, and would deduct the $25,000 borrowed from the Shubert Theatrical Company's share. In March, 1912, apparently for the second time, Liebler & Co. refused to book their plays with the Shubert Theatrical Company of New York. For a second defense, the answer alleges that an action was brought by Liebler & Co. against Lee Shubert for an account of the profits of "The Blue Bird," which action was dismissed. For a third defense, that this court is without jurisdiction.

The cause comes up on a motion by the plaintiff to enjoin the defendants from instituting any actions at law against it, and to strike out all the defenses of the answer of the Shubert Theatrical Company of New Jersey.

Rutgers Bleecker Miller and John Kirkland Clark, both of New York City, for complainant.

William Klein, of New York City, and Simon Fleischmann, of Buffalo, N. Y., for defendant Shubert Theatrical Co., of New Jersey.

James N. Rosenberg, of New York City, for defendant Dittenhoefer.

LEARNED HAND, District Judge (after stating the facts as above).
[1] Dittenhoefer, who has procured an injunction against the payment
of the deposit, is a citizen of New York, and so is the plaintiff. Dis-
regarding for the time being any questions of the equity of the bill, this
situation, therefore, raises the question of the constitutional jurisdic-
tion of this court. That the bill is, from the standpoint of equity, an
original bill, must of course be admitted, but that does not determine
its jurisdictional status, which may none the less be ancillary. Minne-
sota Co. v. St. Paul Co., 2 Wall. 609, 633, 17 L. Ed. 886. It is true that
most cases of ancillary jurisdiction arise when some property has come
into the custody of this court, or at least when some suit is pending in
which it may assume possession at any time. Wabash R. R. Co. v.
Adelbert College, 208 U. S. 54, 28 Sup. Ct. 182, 52 L. Ed. 379. Such,
indeed, is the explanation of cases like Freeman v. Howe, 24 How. 450,
16 L. Ed. 749, Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28
L. Ed. 145, and Pacific R. R. v. Mo. Pac. Ry., 111 U. S. 505, 4 Sup.
Ct. 583, 28 L. Ed. 498. It is in my judgment the explanation even of
Dewey v. West Fairmont Gas Coal Co., 123 U. S. 329, 8 Sup. Ct. 148,
31 L. Ed. 179, where the bill lay in aid of execution out of this court,
the power to exercise possession through its marshal being the equiva-
lent of possession itself. None of these cases helps the plaintiff, unless
personal jurisdiction over the obligor alone brings "property" into
court, even though the true obligee may not be also before it, a possibil-
ity upon which the very equity of the bill depends. It is true that in
bankruptcy it has been decided that personal jurisdiction over the
obligor puts the bankrupt's "property" into court. In re San Antonio
Land & Irrigation Co. (D. C.) 228 Fed. 990; In re Berthoud (D. C.)
231 Fed. 529. And if that rule be of general application, then there
is "property" in court here. If so, it would seem to follow that, under
section 57 of the Judicial Code, this bill would lie against nonresident
obligees, which seems to me a strong position.

I do not mean to rest quite upon that theory, for the question here
really turns upon the word "controversies," as used in section 2 of
article 3 of the Constitution, as defined by section 24, subd. 1, of the
Judicial Code (Comp. St. 1913, § 991 [1]). The "controversy" at least
involves, not only the liability of the obligor, but whether the plaintiff
is the obligee. The plaintiff, by asserting that he is the obligee, has
necessarily invited a decision which must determine the identity of the
obligee, at least negatively, and the complete determination of that ques-
tion is all that the bill of interpleader seeks to secure, because the
court will in the action decide something positive about the identity of
the obligee, even were it to decide that among all possible obligees the
plaintiff is not one, though it may fail to decide which is the actual,
among all putative obligees. In a question of constitutional jurisdic-
tion it should accept the complete determination of that question, as
the whole of the "controversy" at stake in the action; it should not
cut too fine. Suppose section 274b of the Code, as added by act
March 3, 1915, c. 90, 38 Stat. 956, included the addition of codefend-
ants in actions at law, as perhaps it does; the defendant could bring
in all other putative obligees as codefendants. Yet that would be only

because the procedure had become more elastic.    Now, it cannot be that the constitutional jurisdiction of this court over the "controversy" depends upon the mere form of the remedy.    Such bills as these are the equivalent, originated for that very purpose, of the greater procedural freedom of equity.    They merely draw in the whole controversy for a single decision which the rigidity of legal procedure does not allow.    Yet the power of the court to deal with the subject-matter in both cases is necessarily conferred by the Constitution and is not formally determined.

The analogous question of personal jurisdiction has been dealt with in a harmonious way.    Thus, if personal jurisdiction exist over the obligor, it will support such judgment determining the identity of the obligee as the local forms may provide.    This is true of taxation.    Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439; Liverpool, etc., Co. v. Orleans Assessors, 221 U. S. 346, 31 Sup. Ct. 550, 55 L. Ed. 762, L. R. A. 1915C, 903.    It is true, also, to discharge the obligor by payment under garnishment proceedings.    Chicago, etc., Ry. v. Sturm, 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144; Harris v. Balk, 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084. Notice is not even necessary if the local law so provides (B. & O. R. R. v. Hostetter, 240 U. S. 620, 36 Sup. Ct. 475, 60 L. Ed. 829), because the extent of the estoppel is strictly a matter of that law (N. Y. Life Ins. Co. v. Dunlevy, 241 U. S. 518, 36 Sup. Ct. 613, 60 L. Ed. 1140). The last case turns, I think, wholly upon the condition of the Pennsylvania law, though it must be confessed that this is not certain, if all the language be considered.

These cases rest upon the principle that the power to compel the obligor to pay must include the power to protect him in his payment and the successful obligee in his proceeds.    It is exactly analogous to the incidental powers of a court which has custody of a res.    Having awarded possession, the court must have power to protect both him who has delivered and him who has received.    In each case the effective exercise of the power itself involves as an incident its validity against others.    In the case of constitutional jurisdiction over choses in action, the same principle applies as to the territorial jurisdiction over the person in cases of choses in action, and to the constitutional jurisdiction in possessory suits.    The court cannot completely protect the results of its judgment at law in a case such as this, without recourse to that procedural entirety that courts have devised to that end. True, jurisdiction is given only to the District Court, but that court is the same, whether it sits in equity or at law; each side of its jurisdiction contributes to a complete judicial competency in accordance with the customary limitations of the law.    It may be urged that consistently section 57 of the Judicial Code should be held to apply, but that raises a quite separate question; i. e., whether the conferred procedural machinery comprises all the instances to which the constitutional jurisdiction might extend.    This case does not raise that question.

There has been only one case of such ancillary jurisdiction divorced from any possessory element, so far as I have found, and that is a decision of Mr. Justice Clifford in Stone v. Bishop, 4 Cliff. 593, Fed. Cas.

No. 13,482 (1878), a case of a true interpleader. Unfortunately the point of jurisdiction seems not to have been argued, and the authority relied on (Freeman v. Howe, supra), with deference, scarcely supported the ruling. However, it must be taken as a decision, and from a high authority in such matters, that the jurisdiction exists, because the facts required the ruling. The attempted distinction of the defendant between a true interpleader and a bill like this is irrelevant, touching the question of constitutional jurisdiction. I therefore decide that the bill will lie in point of jurisdiction.

[2] As to enjoining any suits in the state courts, the question is not free from doubt, yet I think that, if the federal jurisdiction first attach, as here, section 265 of the Judicial Code (Comp. St. 1913, § 1242) does not apply. The case is quite different if the jurisdiction of this court first arise from the bill of interpleader itself. If, however, as I have said, the jurisdiction in the interpleader be ancillary, and depend upon a more liberal interpretation of "the matter in controversy," obviously it would be absurd to hold that the very purpose of the bill might be defeated through section 265. It may be urged that the bill would lie in the state court as well, and perhaps it might; but, to say the least, the efficacy of such a bill to restrain the action at law already pending in this court is doubtful. I do not rely so much on dicta like Peck v. Jenness, 7 How. 612, 625, 12 L. Ed. 841, and Riggs v. Johnson County, 6 Wall. 166, 196, 18 L. Ed. 768, as upon the well-settled rule in possessory suits and its applicability here, if once it be assumed that the "controversy" may include the determination of the actual obligee.

[3] In point of equity I think the bill will support the usual injunction against further prosecution of the action at law. True, the plaintiff has an interest in the fund, an interest which cannot be computed, perhaps, without an account; but that is the very distinction of a bill in the nature of a bill of interpleader. Pacific, etc., Bank v. Mixter, 124 U. S. 721, 729, 8 Sup. Ct. 718, 31 L. Ed. 567; Groves v. Sentell, 153 U. S. 465, 485, 14 Sup. Ct. 898, 38 L. Ed. 785; Hayward v. McDonald, 192 Fed. 890, 113 C. C. A. 368; McNamara v. N. Y. Life Ins. Co., 114 Fed. 910, 52 C. C. A. 530. The defendant urges that such a bill will lie only when the plaintiff's claim upon the fund is itself equitable, but the meaning of this rule has been misunderstood. There is no reason why the plantiff should not have a bill in the nature of interpleader, though his partial claim be of legal cognizance, provided the plaintiff's (at law) right to a jury trial of that claim be preserved. In Aleck v. Jackson, 49 N. J. Eq. 507, 23 Atl. 760, Vice Chancellor Green entertained the bill in such case, but allowed the original action at law to proceed. In Provident Savings Life Assur. Soc. v. Loeb (C. C.) 115 Fed. 357, the plaintiff's legal interest seems to have been left for general adjudication in the suit.

In the strict case of a bill of interpleader the decree discharges the plaintiff upon his paying the fund into court; the only issue is of the right to interplead, the decree directs the defendants to interplead, and, when they had done so, takes up the issues between them. This cannot be done in a bill like this. The plaintiff has attempted to set up its interest in the deposit, and until that has been decided the amount pay-

able into court cannot be decided. If this controversy were allowed to be settled in the action, it would be settled only as between the parties thereto, and it must be settled again between the other parties. Therefore, for the present at least, the action must be enjoined. If the issues under the plaintiff's claim are legal issues, they may be sent to a jury to determine at the proper time under rule 23 (198 Fed. xxiv, 115 C. C. A. xxiv) if any party wishes. Meanwhile the parties must prepare and serve their counterclaims against each other under rule 31 (198 Fed. xxvii, 115 C. C. A. xxvii). Thus, if Dittenhoefer has any claim against either of the Shubert Theatrical Companies, he may file and serve it; and so, also, the Welden National Bank of St. Albans. If either of the Shubert Theatrical Companies has any claim against the plaintiff, Dittenhoefer, or the Welden National Bank of St. Albans, it may do the same. Similarly, if there is a contest between them as to the title to the deposit. The same rule applies to the Shuberts personally. The defendants and the plaintiff will reply under rule 31 to these counterclaims. At the end of this period, the cause may go on the calendar for trial.

The motion of the plaintiff to strike out the defenses is granted. The second defense has no conceivable relevancy to the suit; the third is a mere point of law, which I have overruled. The first defense is so confused that, after considerable effort, I have been unable to learn what the purpose of the pleader really is. Apparently he means to allege, first, that the Shubert Theatrical Company of New York has a claim in deceit against Liebler & Co., which it can set off against Liebler & Co.'s claim for damages; second, that Liebler & Co. broke the contract under which it was to receive one-half the profits of "The Blue Bird." Evidence bearing upon these two defensive pleadings is so jumbled together that no one can know what the "ultimate facts" really are. Each would be a good defense to so much of the bill as sets up the plaintiff's claim to the fund, but as they stand they violate rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi).

Under rule 20 (198 Fed. xxiv, 115 C. C. A. xxiv) I may require a "further and better statement," and it is under that rule that I strike out the defense, and require the defenses to be so stated, and not the evidence upon them.