## JOHN HANCOCK MUT. LIFE INS. CO. v. KEGAN et al.

### No. 2523.

District Court, D. Maryland.

Feb. 16, 1938.

Knapp, Tucker & Thomas, James Thomas, and Clarence A. Tucker, all of Baltimore, Md., for plaintiff.

Emory, Beeuwkes, Skeen & Oppenheimer and George Gump, all of Baltimore, Md., for defendant Carrie B. Kegan.

Marbury, Gosnell & Williams and Jesse Slingluff, Jr., all of Baltimore, Md., for defendant Culpeper Nat. Bank.

CHESNUT, District Judge.

The defendants in this case have filed a motion to dismiss the bill on the ground that it is neither a bill for interpleader nor a bill "in the nature of interpleader" within the meaning of the Judicial Code, § 24(26), as amended January 20, 1936, c. 13, § 1, 49 Stat. 1096, United States Code Supp. III, title 28, § 41(26), 28 U.S.C.A. § 41(26),

which is the latest amendment by Congress of the Federal Interpleader Statute.

The averments of the bill, so far as material to the ruling on the motion to dismiss, are as follows: The John Hancock Mutual Life Insurance Company, plaintiff, is a Massachusetts corporation doing business in Maryland, and the defendant Carrie B. Kegan, widow of Alfred Kegan, who died September 7, 1937, is a citizen of the State of Maryland; and the other defendant, the Culpeper National Bank, is a national bank situated in Virginia. On January 3, 1924, the Insurance Company issued its policy of life insurance in the face amount of $30,000 to Alfred Kegan as the insured, the proceeds of the policy upon his death to be payable to his wife, Carrie B. Kegan, who was named as the revocable beneficiary. In February, 1931, in accordance with loan privileges of the policy, Alfred Kegan obtained a loan from the Insurance Company, the amount of which with interest on March 15, 1937, was $6,568.40. When the loan was obtained the insured revoked the nomination of his wife as beneficiary and named his executors or administrators as beneficiary; but stated in the application for the change that upon the completion of the loan transaction he further nominated his wife as revocable beneficiary. On October 5, 1935, the loan still being unpaid, the insured executed a collateral assignment of the policy in writing to the Culpeper National Bank to secure a loan from the bank in the amount of $8,600 with interest. The assignment purported to have been signed also by the defendant Carrie B. Kegan. On March 5, 1937, the insured executed an absolute assignment of the policy to the Bank, also apparently signed by the wife, and also revoking the nomination of the beneficiary in the policy; and thereupon the policy was delivered to the Bank which caused the collateral assignment to be cancelled and discharged. On March 15, 1937, the Bank paid to the Insurance Company the full amount of the loan previously made by the insurer on its policy and a notation to that effect was endorsed on the policy. On January 3, 1937, the Bank paid out of its own funds the semi-annual instalment of premium then falling due. The succeeding semi-annual instalment of premium which fell due on July 3, 1937, was not paid to the Insurance Company by the Bank or any one else, and according to the terms of the policy it lapsed for non-payment of premium thirty-one days thereafter.

The policy gave to the "holder" certain non-forfeiture options in the event of such default in the payment of premium. These options were (a) paid-up life insurance in accordance with a certain schedule; (b) payment of surrender value in cash; and (c) extended term insurance in the face amount of the policy in accordance with the schedule therefor. It was provided with respect to option (c) that it could be exercised "upon written request by the holder filed at the home office of the Company within 90 days of the due date of the premium in default." After the lapse of the policy and before the death of the insured, the Bank, claiming to be the holder and absolute owner thereof, elected to take option (a), that is, it had the policy continued as participating paid-up life insurance in the amount of $13,035.

Alfred Kegan died September 7, 1937, and shortly thereafter the Bank filed proofs of death and demanded the aforesaid sum of $13,035 at the same time surrendering the policy for cancellation; but about the same time the defendant Carrie B. Kegan notified the plaintiff not to pay the proceeds of the policy to any one other than herself or her attorneys, claiming that both assignments to the Bank were invalid on the ground that they were executed by Alfred Kegan when mentally incompetent and that her apparent signatures to the assignments were not genuine and not made by her authority; and she also then claimed the right to make the election among the three non-forfeiture options as the beneficiary (and therefore the alleged "holder") of the policy; and pursuant thereto she elected to take extended term insurance, which position, if sound, would have entitled her to claim the full face amount of the policy, $30,000. The plaintiff further alleged that it disputed her right to do so on the ground that she was not at that time the "holder" of the policy even if the assignments were invalid; and that at the time of the death of the said Alfred Kegan the policy was in force only as a paid-up policy in the amount of $13,035 and no more, which amount the insurer was ready and willing to pay to whomsoever is entitled thereto. A photostatic copy of the policy with various endorsements thereon and with copies of the assignments referred to was filed as an exhibit with the bill.

The bill further averred that Carrie B. Kegan had brought suit against the plaintiff in the Superior Court of Baltimore City; and that the attorneys for the Bank threatened to institute suit against the plaintiff in Virginia to collect the aforesaid sum of $13,035; and that in consequence the plaintiff was in danger of double vexation in respect to one liability, and in danger of suffering irreparable injury and loss, as it could not safely pay to either of the claimants without the aid of this court; and that it had filed its approved bond in the case in the amount of $30,000. The bill prayed that the defendants be required to interplead with respect to the claims of money due under the policy; and for an injunction against the prosecution of the pending and threatened suits; and that the plaintiff and its bond be released "from all further liability on account of said policy, upon a proper determination being had as to the amount due thereon, and by the payment by the plaintiff Company of the same."

It thus appears from the bill that the maximum liability of the plaintiff on its policy of life insurance is $30,000, but that one defendant, a citizen of Virginia (for federal judicial jurisdictional purposes), is claiming $13,035 from the plaintiff, and the other defendant, a citizen of Maryland, is claiming $30,000 under the same policy; and thus the plaintiff is subject to double vexation for the one obligation. It also appears that the essential controversy between these two adverse claimants is which one was to be treated as the "holder" of the policy on the death of the insured, Alfred Kegan; and as to this the plaintiff is not disinterested in the result because if the Bank is determined to have been the holder the plaintiff's liability is only $13,035, but if Mrs. Kegan was the "holder" the liability may be $30,000. It is further apparent that the plaintiff's case for interpleader is clearly within the provisions of the statute, unless its interest in the result is sufficient to debar it from the benefit of the statute; and if so debarred the plaintiff may possibly be required to pay $43,035 on an obligation limited to $30,000.

The motion to dismiss is based on the grounds (a) that the bill is not a bill of interpleader because the plaintiff "has a direct substantial interest in the issues of fact alleged to be disputed by and between it and the defendants and by and between the defendants" and (b) "is not a bill in the nature of an interpleader since it alleges no facts constituting grounds for equitable relief other than the fact that the plaintiff is liable to double vexation."

The equitable remedy of interpleader has long been a well known ground of equity jurisdiction. Apart from the special Federal Interpleader Statute, it is maintainable in the district courts under the general provisions of the United States Code, title 28, § 41(1), 28 U.S.C.A. § 41(1), where the jurisdictional amount of over $3,000 and diverse citizenship of the parties exist. Mallers v. Equitable Life Assur. Soc. of United States, 7 Cir., 87 F.2d 233; Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, 937, 106 A.L.R. 617; Penn Mutual Life Ins. Co. v. Meguire, D.C., 13 F.Supp. 967, 972; Turman Oil Co. v. Lathrop, D.C., 8 F.Supp. 870, 873. Compare Eagle, Star & British Dominions v. Tadlock, D.C.Cal., 14 F.Supp. 933, 940. But where the rival claimants to the fund were citizens of and resided in different States there was no available procedure whereby they could be sued in an interpleader suit in any one district court by reason of the venue statute, and because there was no provision in such a case for service of process on the non-resident claimant; and, also because state court suits generally could not be enjoined by the federal courts. Klaber v. Maryland Cas. Co., 8 Cir., 69 F.2d 934, 937, 106 A.L.R. 617. The procedural difficulty was illustrated by New York Life Ins. Co. v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140. See, also, Sanders v. Armour Fertilizer Works, 292 U.S. 190, 194, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950. To remedy this situation the first Federal Interpleader Act was passed by Congress February 22, 1917, c. 113, 39 Stat. 929, and amended February 25, 1925, c. 317, 43 Stat. 976; but it was of limited scope, and was again amended and somewhat expanded by the Act of May 8, 1926, c. 273, § 4, 44 Stat. 417, codified in U.S.C., title 28, § 41(26), 28 U.S.C.A. § 41 (26) note. As thus worded, the statute applied only to bills of interpleader; and it was held in at least two federal decisions, Pacific Mut. Life Ins. Co. v. Lusk, 1930, 46 F.2d 505, 509, D.C.W.D.La., and Klaber v. Maryland Casualty Co., 1934, 8 Cir., 69 F.2d 934, 939, 940, 106 A.L.R. 617, that the statute was not available unless the bill in equity stated a case of interpleader, strictly considered, and that it did not cover the case of a bill "in the nature of a bill of interpleader." To enlarge the scope of the statute in this and other respects it was again

amended in 1936 and it is now provided that the district court shall have original jurisdiction "of suits in equity begun by bills of interpleader or bills in the nature of bills of interpleader duly verified," etc.

■ One requirement for the strict bill of interpleader was that the plaintiff as stakeholder must not have any interest in the fund or claim thereto adverse to any of the defendants who are claimants thereto.

"The general rule is that a party who has an interest in the subject-matter of the suit cannot file a 'bill of interpleader,' strictly so called. In fact, the assertion of perfect disinterestedness is an essential ingredient of such a bill. Killian v. Ebbinghaus, 110 U.S. 568, 4 S.Ct. 232, [28 L.Ed. 246]; Mitchell v. Hayn, 2 Sim. & S. 63; Bedell v. Hoffman, 2 Paige [N.Y.] 199; Atkinson v. Manks, 1 Cow.[N.Y.] 691." Groves v. Sentell, 153 U.S. 465, 486, 14 S.Ct. 898, 905, 38 L.Ed. 785. See, also, Connecticut Gen. Life Ins. Co. v. Yaw, D.C., 53 F.2d 684; Pacific Mut. Life Ins. Co. v. Lusk, D.C., 46 F.2d 505; Sanders v. Armour Fertilizer Works, 292 U.S. 190, 200, 54 S.Ct. 677, 680, 78 L.Ed. 1206, 91 A.L.R. 950; 108 A.L.R. 267.

But a bill in the nature of interpleader, otherwise good, is not defeated by reason of the plaintiff's personal interest in the subject matter, although, as was the case in Groves v. Sentell, supra, he may not be allowed costs or counsel fee by reason of that interest. The distinction is also succinctly made by Circuit Judge Ward speaking for the Second Circuit Court of Appeals, in Sherman National Bank v. Shubert Theatrical Co., 247 F. 256, 260, "although the bill is not strictly one of interpleader, because the complainant is not a mere stakeholder, but itself claims an interest in the account, it is one in the nature of interpleader. This was recognized in Groves v. Sentell, 153 U.S. [465] 485, 14 S.Ct. 898, 38 L.Ed. 785, Killian v. Ebbinghaus, 110 U.S. 568, 4 S.Ct. 232, 28 L.Ed. 246, and McNamara v. Provident Life Assur. Soc., 114 F. [910] 912, 52 C.C.A. 530. In the Killian Case the plaintiff was not in possession of anything, nor subject to liability to different claimants for the same thing or duty, so that equitable relief was denied him. See, also, Hayward v. McDonald, 192 F. [890], 893, 113 C.C.A. 368."

And in Klaber v. Maryland Casualty Co. supra, Circuit Judge Sanborn said:

"The general rule, however, is that the only material difference between a true bill of interpleader and a bill in the nature of a bill of interpleader is that in the latter the plaintiff may show that he has an interest in the subject of the controversy between the defendants. 15 R.C.L. 233, 234; Stephenson v. Burdett, 56 W.Va. 109, 48 S.E. 846, 10 L.R.A.(N.S.) 748; Story's Equity Jurisprudence (14th Ed.) vol. 2, § 1140; 33 C.J. 424."

There have been many reported cases in which the plaintiff, though interested in the controversy, has successfully maintained a bill in the nature of an interpleader. Fleming v. Phoenix Assur. Co., 5 Cir., 40 F.2d 38, certiorari denied 282 U.S. 869, 51 S.Ct. 76, 75 L.Ed. 768; Provident Sav. Life Assur. Soc. v. Loeb, C.C., 115 F. 357, affirmed McNamara v. Provident Life Assur. Soc., 5 Cir., 114 F. 910; Marine Midland Co. v. Irving Trust Co., D.C., 56 F.2d 385; Marine Midland Trust Co. v. Eybro Corp., 2 Cir., 58 F.2d 165; Hayward v. McDonald, 5 Cir., 192 F. 890; McGowan v. Parish, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955; Levinson v. United States, 258 U.S. 198, 42 S.Ct. 275, 66 L.Ed. 563; Metropolitan Life Ins. Co. v. Hamilton, N.J.Ch., 70 A. 677; Equitable Life Ins. Co. of Iowa v. Johnston, Iowa, 269 N.W. 767, 108 A.L.R. 257; Aleck v. Jackson, 49 N.J.Eq. 507, 23 A. 760; 33 C.J. 423, 437; Pomeroy's Eq. Jurisprudence, 4th Ed., Vol. 4, § 1481; Chafee, 42 Yale Law Journal, 59.

It is, however, the contention of the defendants that a bill in the nature of interpleader, although not defeated, as a strict bill of interpleader would be, by interest of the plaintiff, will not lie unless there is some special ground for equitable relief besides double vexation; and it is true that in most, but not all, of the cases above cited, there has existed some such additional special equity, although the necessity therefor has not been much discussed in the cases. In Sherman Nat. Bank v. Shubert Theatrical Co., D.C., 238 F. 225, 230, affirmed 2 Cir., 247 F. 256, 260, Judge Learned Hand, when district judge, said:

"The defendant urges that such a bill will lie only when the plaintiff's claim upon the fund is itself equitable, but the meaning of this rule has been misunderstood. There is no reason why the plaintiff should not have a bill in the nature of interpleader, though his partial claim be of legal cognizance, provided the plaintiff's (at law)

right to a jury trial of that claim be preserved. In Aleck v. Jackson, 49 N.J.Eq. 507, 23 A. 760, Vice Chancellor Green entertained the bill in such case, but allowed the original action at law to proceed. In Provident Savings Life Assur. Soc. v. Loeb (C. C.) 115 F. 357, the plaintiff's legal interest seems to have been left for general adjudication in the suit. ·* * * If the issues under the plaintiff's claim are legal issues, they may be sent to a jury to determine at the proper time under rule 23 (198 F. xxiv, 115 C.C.A. xxiv) if any party wishes."

It seems to be true, as the defendants urge, that the text books on equity jurisprudence dealing with bills in the nature of interpleader generally say that they are allowed only where the plaintiff "has some special ground for equitable relief besides the double vexation." Pomeroy's Eq. Jurisprudence, 4th Ed., Vol. 4, § 1481; 33 C.J. 423. And a bill in the nature of a bill of interpleader is so described in Senate Report No. 558, 74th Cong. 1st Session, relating to the Federal Interpleader Act of 1936. See, also, Chafee, The Federal Interpleader Act of 1936, 45 Yale Law Journal, 963, 970.

■ From the standpoint of principle and as an original proposition it seems rather hard to defend this limitation on bills in the nature of interpleader. The plaintiff's need for the equitable relief would seem to be just as great, if he is liable to double vexation from adverse claimants, where he disputes the claim of one or both in whole or in part, but has no additional ground for equitable relief, as where he has no such dispute. Possibly the limitation derives from the consideration that in a strict bill of interpleader the plaintiff was entitled to costs and counsel fee, and it seemed inequitable to allow him this advantage where he continued to be interested in the litigation over the fund. But if this was the reason the objection can easily be met by denying the allowance, as was done in Groves v. Sentell,

153 U.S. 465, 485, 14 S.Ct. 898, 38 L.Ed. .785. This has been well pointed out by Professor Chafee in his article "Modernizing Interpleader," 30 Yale Law Journal, 842. Of course a bill in the nature of interpleader as well as of strict interpleader must be based on some equitable ground, as otherwise there would be no equitable jurisdiction at all, and the plaintiff would have an adequate remedy at law, as is illustrated by the leading case of Killian v. Ebbinghaus, 110 U.S. 568, 4 S.Ct. 232, 28 L.Ed. 246. It seems that the liability to double vexation should be a sufficient equitable basis for the suit.

■ Lack of interest was only one of the four technical requirements for a strict bill of interpleader. Others included the identity of the thing claimed by the adverse claimants, and the derivation of their claims from a common source, 4 Pomeroy Eq.Jur., 4th Ed., § 1464. As to the latter the 1936 Act provides: "Such a suit in equity may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another." And while the Act does not so specifically refer to the matter of lack of interest, it does expressly extend the coverage to bills in the nature of interpleader, the most conspicuous feature of which, in comparison with strict interpleader, lies in this matter of the plaintiff's interest. And in other respects a comparison of the Act with the former legislation upon the subject shows very clearly the legislative intent to greatly extend the remedial scope of interpleader in the federal courts to meet situations where the equitable relief is greatly needed because impossible of achievement in the courts of any one State, and the Act should be liberally interpreted as remedial legislation. Sanders v. Armour Fertilizer Works, 292 U.S 190, 199, 54 S.Ct. 677, 678, 78 L.Ed. 1206, 91 A.L.R. 950.[1]

---

[1] The Federal Interpleader Acts have indeed met a long felt want, and have been greatly used as is illustrated by the numerous reported federal cases, especially in insurance cases. See 106 A. L.R. 626, and notes to U.S.C.A., title 28, § 41(26). Reported cases in this Circuit are Reid v. Durboraw, 272 F. 99; Union Central Life Ins. Co. v. Deutser, D.C., 13 F.Supp. 313, affirmed Deutser v. Marlboro Shirt Co., 4 Cir., 81 F.2d 139; Ætna Life Ins. Co. v. Hartley, D. C., 4 F.Supp. 639. Recent Supreme Court cases are Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. ·950; Dugas v. American Surety Co., 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720; Worcester County Trust Co. v. Riley, Dec. 6, 1937, 58 S.Ct. 185, 82 L.Ed. ——.

In the Senate Report above referred to there is also a sentence indicative of the legislative intent for liberal treatment of the subject which reads: "Another reason for such jurisdiction is that the distinction between these bills and strict bills of interpleader is not always clear, so that the simplest plan is to al-

331

It is also of much significance to note that Rule 22 (Interpleader) of the new federal rules of civil procedure, recently adopted by the Supreme Court and now lodged with Congress, provides:

"Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to · and independent of one another, *or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants.* * * * The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Section 24(26) of the Judicial Code, as amended, U.S.C., Title 28, § 41(26) [26 U.S.C.A. § 41(26)]. Actions under that section shall be conducted in accordance with these rules." (Italics supplied.)

In the comment by the Advisory Committee to the Supreme Court on Rule 22 (1937 draft of the proposed new rules) it was said:

"The first paragraph provides both for strict interpleader and for actions in the nature of interpleader under the former equity practice. * * * This paragraph re-states the better practice on interpleader, as developed by judicial decisions."

While this new rule affecting federal equity and law practice is not presently in existence, it very clearly indicates that the existence of some interest of the plaintiff in an interpleader case falls within the field of legal practice and procedure rather than substantive law, and tends strongly to support the view that the existence of the interest should not be an absolute bar to the maintenance of the suit. It also indicates that the interest of the plaintiff does not of itself entitle the defendants to a jury trial. See Henrietta Mills v. Rutherford County, 281 U.S. 121, 127, 50 S.Ct. 270, 272, 74 L.Ed. 737; Matthews v. Rodgers, 284 U. S. 521, 529, 52 S.Ct. 217, 221, 76 L.Ed. 447.

But, apart from the above discussion, and if we assume that, until the new federal rules of civil procedure become effective, the existence of some interest of the plaintiff, and the absence of any equity other than double vexation, would generally defeat an interpleader suit under the Act, nevertheless there is a particular provision in the Act of 1936 which makes it precisely applicable to the present case. By (a) (1) of the Act, 28 U.S.C.A. § 41(26), subds. (a) (1), the court is given jurisdiction if "two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property, *or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy, or other instrument, or arising by virtue of any such obligation.*"

The italicized wording is an addition to the provisions of the earlier Act of 1926, and shows the extended scope of the later Act. It quite clearly indicates the legislative intent to include such a case as the present. Here the essential controversy, as averred in the bill, lies in the dispute between the two defendants as to which one was entitled to be treated as the "holder" of the policy and as such was entitled to make the election among the non-forfeiture options available on the lapse of the policy, which of course was one of the benefits arising from the policy. See Chafee, The Federal Interpleader Act of 1936, 45 Yale Law Journal, 977, 978.

And there is another reason why the bill should not be dismissed, at least at the present time. The plaintiff admits its liability for the sum of $13,035 and on the averments of the bill this amount is claimed by each of the defendants, one of whom has brought suit to recover it (as a part of her whole claim of $30,000), and the other defendant has threatened suit therefor. Therefore with respect to the sum of $13,035 the case presents the simple aspect of a strict bill of interpleader; and to the extent of the amount so admitted by the plaintiff to be due, there would seem to be no reason for denying to it relief from double vexation, even though, as suggested by Judge Learned Hand in Sherman Nat. Bank v. Shubert Theatrical Co., D.C., 238 F. 225, 230, supra, the case may hereafter have to be transferred to the law side of the court for jury trial, or dismissed, with respect to the balance of the claim of Mrs. Kegan after final and effective decree regarding the smaller sum of $13,035.

All that it is now necessary to decide is that the motion to dismiss the bill must be

low the United States District Courts to handle both types without being

obliged to draw fine distinctions between them for jurisdictional purposes."

overruled, and the present restraining order against suits by the defendants must be continued pending answers by ·them and further developments in the case. Both defendants are amply protected by the plaintiff's bond heretofore filed in the case. If the defendants desire a prompt trial on the merits of the case, it can be set for an early day upon application.

The defendants' motions to dismiss the bill are hereby overruled.